LEONARD A. FARRAR *vs.* ROSECRANS W. PILLSBURY.

Suffolk.    January 26, 1914. — March 31, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Equity Jurisdiction,* Adequate remedy at law, For an accounting. *Equity Pleading and Practice,* Parties.  *Corporation.*

A breach of an agreement to pay a person $5,000 in cash and to pay off a mortgage of $5,000 on certain land can afford no ground for relief in equity, there being a plain and adequate remedy at law.

Allegations in a bill in equity, that the plaintiff conveyed certain timber land to a corporation, of which the defendant owned most of the capital stock, as security for money advanced by the defendant for the plaintiff's benefit, and that the defendant agreed to be responsible to the plaintiff for the value of the timber land or its reconveyance, show no ground for relief, where there is no allegation that the defendant was under any obligation to sell the timber land or that the land had been sold, and where the prayer for a reconveyance is not supported by any offer to redeem, and where, moreover, the corporation to which the timber land was conveyed is not made a party to the suit.

Allegations in a bill in equity, that the plaintiff procured the conveyance of a sawmill by a corporation of which he owned all the stock to a corporation of which the defendant owned most of the stock, and that the defendant represented that he would account for the value of the sawmill, show no ground for relief, where neither of the two corporations concerned in the transaction is made a party to the suit.

A bill in equity by the owner of all the stock in a corporation, alleging that the plaintiff caused that corporation to convey a sawmill to a corporation of which the defendant owned most of the stock, and that the defendant represented that he would cause the use of the sawmill by the corporation to which it was conveyed to be profitable to the corporation that conveyed it, cannot be maintained without making the two corporations parties to the suit, especially the corporation which was to receive the profit alleged to have been promised by the defendant.

An allegation in a bill in equity, that the defendant represented to the commissioner of corporations that a corporation of which the plaintiff owned all the stock had ceased to do business and that it desired to have its corporate existence terminated under the direction of that commissioner, sets forth no ground for relief, for the reason, among others, that the commissioner of corporations has no power to dissolve a corporation.

BILL IN EQUITY, filed in the Superior Court on July 3, 1911, and afterwards amended, alleging the following facts in substance:

The plaintiff on or about June 1, 1909, was the owner of about

twelve hundred acres of land in the State of Vermont, covered with a large amount of standing timber, both soft and hard wood, all of great value, and also was the owner or in actual control of the entire capital stock of the Farrar Lumber Company, a Massachusetts corporation which owned a portable sawmill of the value of $6,000, then located in the State of Maine. The timber land was subject to a mortgage for $5,000, held by one Mosher, and there also was outstanding a mortgage given by the plaintiff in the sum of $4,500 held by one Jones, $3,000 of which was a second mortgage on the timber land, and $1,500 of which was an incumbrance on the sawmill.

On or about June 1, 1909, the plaintiff entered into an agreement with the defendant as follows: The plaintiff agreed to transfer or cause to be transferred to the defendant one half of the capital stock of the Farrar Lumber Company, and to vote for the defendant as treasurer of that corporation. The plaintiff and the defendant further agreed to move the sawmill from its then location to the plaintiff's property at Hancock, Vermont, and to proceed to cut the soft timber, using the mill to prepare it for sale. The defendant agreed to supply whatever money was necessary for the removal of the mill to Hancock, and for the lumber operations on the plaintiff's property at Hancock, and to pay the plaintiff for the soft timber on the land the sum of $5,000. The defendant was to have the general control of the cutting and marketing of the timber and was to receive the proceeds of all sales thereon for his own account. The plaintiff was to manage the work of cutting the timber and of operating the mill, and was to receive therefor the sum of $100 per month for his services. In addition to the payment of the sum of $5,000 for the timber the defendant agreed to pay off the first mortgage on the land held by Mosher, the plaintiff expecting and intending to pay off the second mortgage out of the sum of $5,000 to be paid to him by the defendant.

At or near the date of the agreement the defendant represented to the plaintiff that he had caused the formation of the North American Spruce Lumber Company, a Maine corporation, which was to acquire, own and operate various parcels of timber land from time to time, that he the defendant did and would control the North American Spruce Lumber Company, and that he

would cause the use of the sawmill in the operation of its property by the North American Spruce Lumber Company under contracts which would result in profit to the Farrar Lumber Company, and consequently to both the plaintiff and defendant as owners of the stock thereof. The defendant did cause the formation of the North American Spruce Lumber Company, and did control it. He turned over to it certain options and rights in timber lands, including his rights in the plaintiff's property at Hancock, Vermont, and caused the transfer to himself of all of its capital stock, with the exception of a few shares which he caused to be issued to his nominees, directors therein.

The defendant neglected and refused to pay to the plaintiff the $5,000, with which he could have paid the second mortgage, before that mortgage fell due, and the plaintiff was unable to pay it. The defendant thereupon, "wrongfully and without right and in violation of the said agreement" and as a condition precedent to the payment by the defendant of that mortgage for and on account of the plaintiff, required the plaintiff to convey the timber land to the North American Spruce Lumber Company as security for the money advanced by the defendant to pay the second mortgage, the defendant agreeing to be responsible to the plaintiff for the value thereof or for the return of the property to the plaintiff at the end of the lumber operations at Hancock.

The plaintiff conducted the lumber operations at Hancock and received the sum of $100 per month for his services as agreed. He had no knowledge of the lumber operations outside of the actual cutting of the timber and the operation of the sawmill.

When the lumber operations were about completed the defendant requested the plaintiff to cause the mill to be conveyed to the North American Spruce Lumber Company, representing that it would be for the best interests of the plaintiff so to do, and that he, the defendant, would account for its value, and the plaintiff did so, receiving no consideration; and no consideration was paid to the Farrar Lumber Company.

The plaintiff often and without avail demanded payment of the $5,000 by the defendant, and an accounting of the amounts received by the defendant from the North American Spruce Lumber Company or from any other source for the properties so conveyed to that company for the joint account of the plaintiff and

defendant or from the operation and use thereof by the defendant or by the North American Spruce Lumber Company.

The defendant represented to the commissioner of corporations of Massachusetts that the Farrar Lumber Company had ceased to do business, that its property had all been conveyed to the North American Spruce Lumber Company, and that it desired to have its corporate existence terminated under the direction of said commissioner. The plaintiff had no knowledge of such action on the part of the defendant until long afterward, never consented thereto, and by reason thereof whatever rights or interest he had in the Farrar Lumber Company were totally lost.

There also was an allegation that the account between the plaintiff and the defendant was complicated and made up of many items, covering a long period of time, as to the details of which the plaintiff had no specific knowledge.

The prayers of the bill were for an accounting by the defendant covering all the matters and things enumerated in the bill; that the defendant be ordered to account for the value of the timber land deeded by the plaintiff to the North American Spruce Lumber Company, or, in default thereof, that he be ordered to cause a deed of the land to be executed and delivered to the plaintiff, free of all incumbrances; for an execution against the defendant for the amount found to be due the plaintiff; and for general relief.

The defendant demurred to the bill upon the grounds that it did not set forth any right to relief in equity; that it appeared that the plaintiff had a plain, adequate and complete remedy at law; that the bill was multifarious, and that the corporations named therein were necessary parties but were not joined therein.

The demurrer was heard by *Morton,* J., who overruled it, and reported the case to this court for determination, certifying that he was of opinion that his order so affected the merits of the suit that the questions raised by the demurrer ought to be determined by this court before further proceedings.

*G. M. Palmer,* for the defendant.

*A. P. Teele,* for the plaintiff.

DE COURCY, J. This is a bill for an accounting and for the reconveyance of a lot of land, and is before us on a demurrer. The bill contains many allegations, involving two corporations

which are not parties to this suit. As against the defendant personally, the plaintiff individually makes the following complaints, which we shall consider first. In June, 1909, the plaintiff owned some timber land in Hancock, Vermont, and owned or controlled the stock of the Farrar Lumber Company, a corporation which was the owner of a portable sawmill. He sold to the defendant the soft timber upon the land, and transferred to him one half of the capital stock of the Farrar Lumber Company. The defendant agreed to pay to the plaintiff $5,000 in cash and also to pay off a $5,000 mortgage on the land that was held by one Mosher. For the breach of these two items of the agreement plainly there is an adequate remedy at law. As to the contract to finance the timber cutting operations, there does not appear to have been any failure on the part of the defendant because the timber has been cut and sold, and was the property of the defendant. The promise to pay the plaintiff $100 a month for attending to the lumbering operations has been complied with. It is not alleged that the use of the sawmill has not been paid for; but even if such is the fact, the right of action is at law and is in the Farrar Lumber Company and not in the plaintiff.

An additional ground of complaint arose during the lumber operations above stated. The plaintiff was indebted to one Jones in the sum of $4,500, of which amount $3,000 was secured by a second mortgage on the timber land, and $1,500 by some incumbrance on the sawmill. The defendant advanced the money to pay this mortgage, and as security for its repayment the plaintiff conveyed the timber land to the North American Spruce Lumber Company, a corporation of which the defendant owned most of the capital stock. While it is alleged that the defendant agreed to be responsible to the plaintiff for the value of the land or for the return of the property, it is not suggested that he was under any obligation to sell the land, or that it has been sold. The prayer for a reconveyance is not supported by any offer to redeem; and a further valid objection raised by the demurrer is that the North American Spruce Lumber Company, which holds the title, is not made a party to the bill.

Again, it is alleged that upon the request of the defendant the plaintiff caused the title to the sawmill to be transferred to the North American Spruce Lumber Company, and that the defend-

ant represented that he "would account for" the value of the same. Presumably by this is meant that the defendant would pay what the mill was worth. Here again is a right of action in the Farrar Lumber Company, the owner of the mill, and the objection is seasonably made that it is not a party to this suit. And both corporations are necessary parties to the alleged breach of an agreement by the defendant to account both for the value and the use of the land and mill by the North American Spruce Lumber Company.

It is set out in the fourth paragraph of the bill that the defendant also represented that he "would cause the use of said sawmill in the operation of its property by said North American Spruce Lumber Company under contracts which would result in profit to said Farrar Lumber Company, and consequently to both the plaintiff and defendant as owners of the stock thereof." It is apparent that the Farrar Company is a necessary party to the enforcement of the action, if any, that is based on this indefinite promise.

It is not clear whether the plaintiff intends by the tenth paragraph of his bill to claim a further ground for relief. This sets out that the defendant represented to the commissioner of corporations that the Farrar Lumber Company had ceased to do business and that it desired to have its corporate existence terminated under the direction of said commissioner. It is sufficient to say that the power to dissolve a corporation rests, not with the commissioner, but with the court or Legislature. St. 1903, c. 437, §§ 2, 51.

Upon examination of the various allegations of wrongdoing on the part of the defendant set forth in the plaintiff's bill, we are constrained, for the reasons already stated, to sustain the demurrer to the bill in its present form.

*So ordered.*