HODGE et al. v. MEYER et al.

(Circuit Court of Appeals, Second Circuit. May 1, 1918.)

No. 225.

1. MALICIOUS PROSECUTION ⊜⊃10—SUITS AGAINST RAILROADS—INJURY TO STOCKHOLDERS.

Though the institution of lawsuits against railroad incidentally caused injury to stockholders, the latter have no cause of action against plaintiff therein, where it does not appear that suits were not brought within legal rights of plaintiffs, or that the right to sue was used as means of injuring such stockholders.

2. TORTS ⊜⊃12—WRONGFUL INTERFERENCE WITH CONTRACT—RIGHTS OF INJURED PARTY.

Damages are recoverable, when sustained by reason of the wrongful interference of third parties, resulting in a breach of contract, but only by a party who is shown to be damaged thereby.

3. CORPORATIONS ⊜⊃202—INJURY TO CORPORATION SECURITIES—RIGHT TO SUE.

The direct and proximate consequences of a wrong done to the securities held by a bondholder or stockholder should be rectified by appropriate suit by the corporation; the bondholder or shareholder's remedy being in and through the corporation.

4. CORPORATIONS ⊜⊃202—CONTRACTS—INDIVIDUAL ACTION BY STOCKHOLDERS.

Where principal stockholders of a railroad made contract with principal stockholder of another railroad for amalgamation of the railroads, and subsequent contract between them recited that stockholders approved of prior contract, the principal stockholders, who made agreement, have no individual right of action for damages for wrongful interference of third persons, causing breach of the contract; the injury being to the amalgamated corporation.

In Error to the District Court of the United States for the Southern District of New York.

Action by Nellie C. Hodge, as administratrix of the estate of Hiram A. Hodge, deceased, and another, against Arthur L. Meyer and others. Judgment of dismissal, and plaintiffs bring error. Affirmed.

Appeal from a dismissal of the plaintiffs' complaint in an action at common law. Hiram A. Hodge and Frank D. White instituted this suit to recover $2,500,000 as damages for an alleged wrong committed by the defendants, in that, by their acts as set forth in the complaint, they caused a contract made by the plaintiffs with the defendant Meyer to be breached. By a stipulation entered into the motion was preliminarily heard the cause was reached, and the complaint dismissed, on the ground that it failed to set forth a cause of action. The action is in tort, and it is alleged the defendants combined and conspired together to prevent the performance of a contract entered into on the 16th of October, 1901, between Hiram A. Hodge, acting for himself and all the stockholders of the Quebec Southern Railway Company, and the defendant Arthur L. Meyer, acting for himself and all the stockholders of the South Shore Railway Company. The contract provided for a consolidation of the two lines of railway. Among other things, it provided that an application be made to the Canadian government for a charter for a railroad company to be organized for the purpose of amalgamating the two companies, with a capital stock of $4,000,000: bonds to be issued on the lines of railroad to be constructed at a rate not exceeding $20,000 per mile. The application for the charter was to be undertaken by Hodge; the name of the company and the directors thereof to be agreed upon. The shareholders of the Quebec Southern Railway Company were to receive for

⊜⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

their property 57 per cent. of the stock and first mortgage and income bonds, and the shareholders of the South Shore Railway Company were to receive 43 per cent. of the stock, with a certain amount of first mortgage and income bonds. There were to be issued bonds to be held in the treasury and used from time to time as might be necessary for the new company. Provision was made for the conveyance, free and clear, as of the date of the agreement, of the property of the respective railways, except that the Quebec Southern Railway Company was to be conveyed subject to a bond indebtedness of $1,000,000. A further provision, not material here, was made for possible defects in the title. Provision was made for future management of the new railroad to be organized. Later it was determined to amalgamate the two companies under the existing charter of the Quebec Southern Railway Company, and the agreement for such amalgamation was entered into on July 24, 1902. This provided for the increase of the capital stock of the Quebec Southern Railway Company to $4,000,000, and for the issuance of first mortgage and income bonds aggregating $20,000 per mile. It recited that the stockholders approved the agreement entered into between Hodge and Meyer on October 16, 1901, and provided for an extension of its lines of railway from its then termini—provided for the conveyance of the property of the South Shore Railway Company to the Quebec Southern Railway Company, and that the amalgamated companies shall carry out and perform the terms and conditions of the October 16, 1901, agreement.

The complaint after setting up both agreements, alleges that "the defendants at divers times and places, well knowing the facts and premises, combined and conspired together for the purpose, among other things, of breaking said agreement of October 16, 1901, and causing and procuring the same to be broken, and of hindering and delaying and of wholly preventing the further performance thereof, and also of said agreement of January 24, 1902, by either or any of the parties to said agreements or either of them, of avoiding, annulling, undoing, and setting aside the several acts and things so done as aforesaid in pursuance and performance of said agreement, in amalgamating and uniting said companies, and of hindering and wholly preventing the further or continued amalgamation or union thereof, and of hindering and wholly preventing the plaintiff White and said late Hiram A. Hodge, from having, receiving or enjoying any of the property, profits, gains, benefits," etc. Therefore plaintiffs seek redress for alleged damage due to the failure of performance of the contracts referred to. The complaint alleges that the plaintiffs were the owners of a large majority of the capital stock of the Quebec Southern Railway Company, and that Meyer, the other contractor in the October 16th agreement, was the owner and in control of a large majority of the capital stock of the South Shore Railway Company; that after the execution of the contracts the parties proceeded to carry out the same as provided therein, reorganizing the board of directors, procuring the authority of the stockholders to the amalgamation agreement and the execution of the January 24, 1902, agreement, the transfer of the property of the South Shore Railway Company to the Quebec Southern Railway Company on March 11, 1902, the application on April 15, 1902, of a sanction and order fixing the capital stock of the Quebec Southern Railway Company at the sum of $4,000,000, subject to the provisions of the amalgamation agreement, the execution and delivery of a trust mortgage to the National Trust Company, the making of a contract with a contractor to build extensions for the amalgamated company, and a contract for the printing and engraving of the bonds, the rendition of services by Hodge and White, and the expenditure of money in the furtherance of attempting to carry out the October agreement. It alleged a willingness to fully perform said agreement, which would have resulted in profit to the plaintiffs; alleges the plaintiffs would have been entitled to certain stocks and bonds from the amalgamated company, had the contract been fully performed. It then alleges the conspiracy to cause the October agreement to be broken, and to hinder, delay, and prevent its performance, and also the performance of the agreement of January, 1902, with the object of acquiring for the defendants possession of the stocks and bonds of said railway and the control and profits of the rail-

road. The defendants Cannon and Vanderbilt are charged with having joined this conspiracy soon after its formation and participated in its consummation. The complaint then alleges that, pursuant to said conspiracy, false statements were made to the National Trust Company, resulting in their withholding the certification of the stock mortgage bonds; false representations were made to the contractor, Dunn & Co., as to the mortgage affecting the property of the South Shore Railroad Company, the bonds of which were to be taken by the contractor in part payment; that suits were maliciously instituted, which were all disposed of because of lack of prosecution, all of which resulted in the trust company refusing to certify the mortgage bonds of the amalgamated company, or to act as trustee under the mortgages; and that the contractor refused to proceed with the performance of his contract for extending the line, by reason of which acts the road was finally taken away from the plaintiffs, eventually passed into the hands of a receiver, and was sold at judicial sale, resulting in the stocks and bonds becoming worthless, all of which resulted in damage to the plaintiffs.

Walter Carroll Low and Monroe J. Cahn, both of New York City, for appellants.

Francis S. Bangs, Henry B. Anderson, Howard Taylor, Philip W. Russell, and Roy C. Gasser, all of New York City, for appellees.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge (after stating the facts as above). The judge below dismissed the complaint on the ground that the acts complained of, if wrongful, were wrongful as against the amalgamated company, and not the plaintiffs as stockholders. Undoubtedly, the intention of Hodge and Meyer, as obtained from the October agreement, was to provide for the amalgamation of the two railroad companies, thus making a continuous line, with profit to the railroads by reason of such consolidation. The object of the January agreement was the amalgamation of the two companies, after having obtained the approval of the stockholders, with the same purposes in mind, although the conditions were somewhat changed, in that the South Shore Railway Company conveyed its property to the Quebec Southern Railway Company, whose capital stock, it was provided, would be increased to $4,000,000, and the idea of obtaining a new charter was abandoned.

Plaintiffs' suit is predicated upon an injury done to property interests jointly held, and those interests are ownership in stock and therefore whatever injury was done by reason of the alleged tortious acts was suffered by the plaintiffs by virtue of their positions as shareholders. Hodge signed the October agreement "for himself and stockholders of the Quebec Southern Railway Company," and Meyer signed "for himself and stockholders of the South Shore Railway Company."

The October agreement provided that the obligations imposed upon the shareholders of the respective companies "are binding upon the present shareholders of each company, and do not extend to future holders of stock transferred as herein provided. The stock and bonds of the new company as herein allotted are to be issued, respectively, to the present shareholders of the Quebec Southern Railway Company and the South Shore Railway Company, and are not to be

252 F.—31

construed as belonging to shareholders of either company who acquire their holdings subsequent to the execution of this agreement as herein provided." It further provides that the first mortgage bonds and income bonds must be held in the treasury and used from time to time as may be necessary for the purposes of the new company. This agreement provided only for the possibility of the building of an extension, whereas the January agreement provided for an extension.

The alleged tortious acts have to do entirely, so far as any alleged material loss is concerned, with the prevention of additions and extensions to the amalgamated company. The January agreement recited that the stockholders of both companies "have taken communication and have declared themselves to be satisfied with a certain private agreement entered into on the 16th of October, 1901, between certain of the stockholders of the above parties with respect to the assumption of obligations before them and the remuneration to be paid therefor, so as to assist in bringing about the amalgamation proceedings herein finally consummated," and it further recites that the "same are satisfactory in all respects to them and have become parties to these presents and confirmation thereof."

These recitals indicate satisfaction of the stockholders, including the plaintiffs in this action, one of whom signed as president of his company. Therefore the idea of amalgamation and substantially the terms of the October agreement, with changes voluntarily imposed, were taken over, written in, and made part of the January agreement. Whatever rights of contracts were thus acquired by the contracting parties under the January agreement accrued for the benefit of the respective corporations, and therefore their stockholders. The plaintiffs' interest is derivative from the corporation. There was no particle left in regard to which the October agreement was not fully performed, or performance permanently waived and abandoned by consent of all concerned. What is intended in the January agreement, when the parties stated that the October agreement was to be further performed, could only give effect to those provisions which were not abandoned when the January contract was made.

Examining the alleged wrongful acts committed by the defendants, it is charged that by reason of the actions of the defendants, because of false representations as to the authorization of the bonds by the company, the National Trust Company refused its certification and to act as trustee, and this act, so charged, consists of a telegram of June 24, 1902, to the National Trust Company. But there is nothing to show any interest of Hodge or White personally in any bonds which were refused certification, nor is there any allegation that the letter which was subsequently sent to the Trust Company, and a similar letter sent to the Canadian government, requesting it not to sanction the amalgamation of the companies, had any effect. Indeed, it appears in paragraph XI that the Canadian government did sanction the amalgamation.

As to the charge that a letter was written to Dunn & Co. with similar false representations, it does not appear anywhere in the October agreement that either party bound themselves to build any

extension of the consolidated property, and this contract was made solely by reason of the covenant contained in the January agreement to build such an extension. Nowhere in the complaint is there any allegation tending to show that the so-called maliciously instituted suits were not brought within the absolute legal rights of the plaintiffs therein, nor does it anywhere appear that this legal right to suit was used as a means of injuring the plaintiffs.

[1] The plaintiffs here, although incidentally injured by the plaintiffs in the Canadian suits, have no cause of action therefor. While the complaint is full of allegations and legal conclusions as to a conspiracy, the specific acts are above referred to, and, if such acts were of a tortious character, they breached only the January agreement.

[2] This action seeks to recover damages to the plaintiffs personally. They sue in individual capacity, and not on behalf of other shareholders, or such as may come in. All the benefits accruing to either or both of the plaintiffs must accrue through the amalgamated corporation. It is well settled that damages are recoverable, when sustained by reason of the wrongful interference of third parties resulting in a breach of contract, but this right accrues only to him who is shown to be damaged thereby. Angle v. Chicago, etc., Ry., 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55; Miles Med. Co. v. Park, 220 U. S. 373, 31 Sup. Ct. 376, 55 L. Ed. 502; Lewis v. Bloede, 202 Fed. 7, 120 C. C. A. 335.

[3] In contemplation of law, the direct and proximate consequences of a wrong done to the securities held by a bondholder or stockholder should be rectified by an appropriate suit on the part of the corporation. The bondholder's and shareholder's remedy is in and through the corporation. Niles v. N. Y. C., etc., R. Co., 176 N. Y. 119, 68 N. E. 142; De Neufville v. N. Y. & N. Ry. Co., 81 Fed. 10, 26 C. C. A. 306.

[4] We concluded that, if there were any injury, it is to the corporation, and gives no individual right of action, although the injury to the corporation may incidentally result in the depression of the value of the stock and bonds. The judgment below was a dismissal upon the merits, but the error of this is of little importance, for it appears that the statute of limitations has intervened against any further claim.

The judgment will be affirmed.