## GREEN v. VICTOR TALKING MACH. CO.

Circuit Court of Appeals, Second Circuit. February 6, 1928.

No. 139.

**I. Fraud ⊚⇒43—Allegations of defendant's false pretense of friendship in advising sale of stock and attempted intimidation did not state cause of action.**

In a tort action, allegations of defendant's false pretense of friendship in advising plaintiff to sell stock, and of attempted intimidation which would impair value of shares, *held* not to state a cause of action, in view of fact that plaintiff was not induced thereby to part with property.

**2. Corporations ⊚⇒202—Attempt to induce corporate employees to leave employment gives rise to cause of action by corporation only.**

An attempt to induce employees of corporation to leave employment would only give rise to a cause of action by corporation, rather than its shareholders.

**3. Pleading ⊚⇒8(3)—Allegations in tort action of disclosure of confidential information, damage to plaintiff's credit, and unfair interference with business held mere conclusions.**

In tort action to recover for alleged damage to corporate stock because of interference with business, allegations of disclosure of confidential information, damage to credit, and unfair interference with business *held* mere conclusions of pleader.

**4. Corporations ⬌202—Shareholders have no relation with one committing tort against corporation's rights.**

Rights of corporation shareholders are derivative, and, except through the corporation, shareholders had no relation with one committing a tort against the corporation's rights.

**5. Corporations ⬌202—Sole shareholder cannot sue for trespass on or conversion of corporation's property.**

Even a sole shareholder has no independent right, which is violated by trespass on or conversion of corporation's property, since only corporate rights have been invaded, and consequently he cannot sue tort-feasor in an action at law.

**6. Corporations ⬌202—Shareholder has no personal right of action against tort-feasor invading corporate rights, though such tort-feasor is animated by malice toward particular shareholder.**

Fact that tort-feasor is animated by malice toward a particular stockholder, rather than corporation, does not give shareholder a personal right of action, since intention of tort-feasor is to invade corporate rights of shareholders, whether end is desired as means of satisfying grudge against particular shareholder, or all of them, and remedy is by suit by corporation.

**7. Corporations ⬌202—That defendant alleged to have unlawfully interfered with corporate business induced purchase by plaintiff's testator did not authorize tort action by shareholder.**

The fact that defendant, charged with having interfered with corporate business, had originally induced plaintiff's testator to purchase corporate shares, does not authorize bringing of action for such tort by such shareholder, since damage is to rights of shareholder and remedy by suit by corporation.

**8. Trade-marks and trade-names and unfair competition ⬌68(1)—Person has privilege of dealing with third parties and right that others shall not interfere therewith.**

A person has the privilege of dealing with third parties, and right that others shall not, without justification, interfere with his exercise of that privilege.

**9. Trade-marks and trade-names and unfair competition ⬌68(1)—Private trader may exercise own pleasure as to parties he deals with.**

A private trader is privileged to exercise his own pleasure as to parties with whom he will deal.

**10. Corporations ⬌202—Unjustifiable refusal to deal with corporation does not constitute injury to shareholder, except as to derivative or corporate rights.**

A tort to corporation, consisting of refusal without a justifiable motive to deal with it, does not constitute an injury to stockholder, except in respect to derivative or corporate rights, remedy for which lies through a suit by corporation.

**11. Corporations ⬌202—Breach of contract to deal with corporation does not constitute tort against corporate shareholders.**

Breach of contractual duty to deal with corporation gives no right of action to shareholders, since one breaking a contract with a corporation does not commit a tort against shareholders.

In Error to the District Court of the United States for the Eastern District of New York.

Action by Lydia M. Green, individually and as executrix of the last will and testament of Thomas F. Green, deceased, against the Victor Talking Machine Company. Judgment of dismissal, and plaintiff brings error. Affirmed.

See, also, 15 F.(2d) 869.

Jeffery & Redmond, of New York City (Joseph F. Murray and William P. Jeffery, both of New York City, of counsel), for plaintiff in error.

Hughes, Rounds, Schurman & Dwight, of New York City (George W. Schurman, Augustus L. Richards and J. Harold Merrick, all of New York City, of counsel), for defendant in error.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge. Federal jurisdiction is based on diversity of citizenship. The complaint sets forth that plaintiff owns all the capital stock of the Pearsall Company, having acquired the same as executrix and sole legatee under the will of her deceased husband; that the only business of the Pearsall Company was to resell products purchased by it from defendant; that prior to Mr. Green's death, and at a time when he owned two-thirds of the shares of said corporation, defendant had requested him to purchase shares which one Ornstein claimed to own, being the remaining one-third of its capital stock, and had informed said Green that, if he failed to do so, defendant would terminate its dealings with Pearsall Company, but, if he complied with its request, defendant would continue to sell its products to Pearsall Company so long as said corporation should remain financially sound and successful in the sale of defendant's products; that said Green relying on defendant's statements, purchased the Ornstein shares; that immediately after Green's death, on March 23, 1924, defendant and its directors entered into a malicious scheme and conspiracy to secure for itself or its nominee the assets and good will of the Pearsall Company, and in furtherance of such scheme sought to induce

plaintiff to sell her stock, by falsely pretending to give her disinterested advice to sell, and by attempting to intimidate her into selling by notifying her that, unless she would do so, defendant would cease to deal with Pearsall Company after December 14, 1924, although Pearsall Company had remained financially sound and a successful distributor of defendant's products; that defendant sought to cause employees of Pearsall Company to leave it, gave its competitors confidential information concerning its business and finances, damaged its credit, and by secret and unfair means interfered with its business; that defendant offered to withdraw its refusal to sell its products to Pearsall Company after December 14, 1924, if plaintiff would sell her stock, and, upon her declination, defendant did cease to sell to Pearsall Company after said date; and that by reason of the unlawful and malicious acts of defendant the value of Pearsall Company as a going concern was destroyed, and all the benefits accruing to plaintiff through her ownership of its stock were lost, to her damage in the sum of $500,000. Judgment is asked for this sum and for a like amount as exemplary damages.

By stipulation it was agreed that the complaint should be construed as declaring solely upon a cause of action in tort, and not for any alleged breach of contract between the defendant and any other person or corporation. We are limited, therefore, to considering whether the allegations charge defendant with committing a tort.

[1] The allegations of false pretense of friendship in advising the sale of stock amount to nothing as a cause of action, for they were not effective. See Ming v. Woolfolk, 116 U. S. 599, 602, 6 S. Ct. 489, 29 L. Ed. 740. The same is true with respect to the charge of attempted intimidation by threat of conduct toward the Pearsall Company which would impair the value of her shares. Plaintiff was not induced by fraud or intimidation to part with her property. She still has her shares, though their value has been impaired through destruction of the corporation's business.

The essence of her complaint is that defendant, after inducing her testator to purchase certain shares in the Pearsall Company, impaired the value of them (1) by affirmative interference with its business; and (2) by refusing to continue to deal with it; and did these things with the purpose of inducing her to sell her stock to the defendant's nominee, and, failing in that, with the purpose of destroying the value of her shares.

[2-4] Considering first the affirmative interference with the corporation's business: The attempt to induce employees to leave the Pearsall Company, not only is nowhere alleged to have been successful, but, if so, would have given rise to a cause of action to the corporation, rather than to its shareholders. See Hodge v. Meyer, 252 F. 479, 483 (C. C. A. 2); De Neufville v. New York & N. R. Co., 81 F. 10, 12 (C. C. A. 2); Niles v. N. Y. Cent. & H. R. R. Co., 176 N. Y. 119, 68 N. E. 142. The allegations of disclosure of confidential information, damage to credit, and unfair interference with business are mere conclusions of the pleader; but, even if they were treated as adequately pleaded, they would be subject to the same objection that they charge a breach of duty owing to the corporation rather than to its shareholders. The shareholders' rights are derivative, and, except through the corporation, the shareholders have no relation with one who commits a tort against the corporation's rights. Converse v. United Shoe Machinery Co., 185 Mass. 422, 70 N. E. 444; United Copper Securities Co. v. Amalgamated Copper Co., 244 U. S. 261, 37 S. Ct. 509, 61 L. Ed. 1119; Hodge v. Meyer, supra; Niles v. N. Y. Cent. & H. R. R. Co., supra.

[5] When there are numerous shareholders, it is apparent that each suffers relatively, depending upon the number of shares he owns, the same damage as all the others, and that each will be made whole if the corporation obtains restitution or compensation from the wrongdoer. Obviously it is sound policy to require a single action to be brought by the corporation, rather than to permit separate suits by each shareholder. In logic the result is justified, because the only right of the shareholder which has been infringed is what may be called his derivative or corporate right. Having elected to conduct their business in a corporate form, the men behind the corporation have, in the phrase of Justice Holmes, "interposed a nonconductor" between themselves and those who deal with them in their corporate enterprise. Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S. 267, 273, 28 S. Ct. 288, 52 L. Ed. 481. Even when all the stock is owned by a sole shareholder, there seems no adequate reason to depart from the general rule that the corporation and its shareholders are to be treated as distinct legal persons. Therefore even a sole shareholder has no independent right which is violated by trespass upon or conversion of the corporation's property. Only his "corporate rights" have been invaded, and consequently he cannot sue the tort-feasor in

an action at law.    Button v. Hoffman, 61 Wis. 20, 20 N. W. 667, 50 Am. Rep. 131; Farrar v. Pillsbury, 217 Mass. 330, 104 N. E. 737; see Ulmer v. Lime Rock R. Co., 98 Me. 579, 57 A. 1001, 66 L. R. A. 387; 1 Morawetz, Corporations (2d Ed.) §§ 232, 233.

[6] Admitting this to be the general rule, the appellant contends that the result is different when a tort-feasor is animated by malice toward a particular shareholder, and that in such circumstances the principle that intentional harm without justification is actionable gives the shareholder a personal right of action, whether he is a sole shareholder or one of many.    With this contention we cannot agree.    Assuming that the allegations of the complaint are adequate to charge that the defendant's motive in doing the above-mentioned affirmative acts to the injury of the corporation's credit and business was a malicious desire to damage plaintiff as a shareholder, the cause of action is still the corporation's.    The intention of the defendant is to invade the "corporate rights" of the shareholders;    that is, the corporation's rights, whether this end is desired as a means of satisfying a grudge against some particular shareholder or all of them, or for some other motive. · A defendant's motive in interfering with the corporation's business may be material in determining whether his interference is tortious or privileged, as in the case of fair competition; but his motive will not of itself create an independent cause of action in favor of shareholders, because only their derivative or corporate rights have been infringed.    The policy of having their remedy lie in a suit by the corporation is not affected by the wrongdoer's malice toward an individual shareholder.

For a shareholder to obtain a personal right of action there must be relations between him and the tort-feasor independent of those which the shareholder derives through his interest in the corporate assets and business.    Thus, in Ritchie v. McMullen, 79 F. 522, 533 (C. C. A. 6), where the shareholder had pledged his stock with defendants who were directors of the corporation, it was held that the pledge created a duty in defendants not to use their power as directors for the purpose of impairing the value of the pledgor's stock.    Judge Taft, who wrote the opinion, cited in support of the decision Walsham v. Stainton, 1 De Gex, J. & S. 678.    There the plaintiff sold her stock to defendants at less than its real value, as a result of a conspiracy by them to use their powers as controlling shareholders and officers of the corporation, so as to deceive plaintiff as to the value of her shares.    The suit was to compel them to account for the actual value of the shares, and the court held there was a direct liability to the plaintiff because they thus acquired her shares.    If she had not parted with them, we think her remedy for any impairment of their value due to defendants' conduct would have had to be through a suit by the corporation.

[7] In the instant case defendant is charged with having induced plaintiff's testator to purchase one-third of the shares the plaintiff now owns.    Did that fact create a duty to plaintiff's testator, to which plaintiff has succeeded, that the defendant should not thereafter commit torts against the corporation which would impair the value of those shares?    There is no allegation of any fraud or deception by defendant at the time it induced the purchase.    No tort was committed against the testator which has survived to his executrix.    Therefore the defendant owed no duty to the plaintiff, any greater than it would owe to any other transferee of Mr. Green's shares.    We cannot think that one who in good faith induces another to buy shares in a corporation owes to him and to all successive owners of those shares a duty, independent of that owed to the corporation, not to do a wrong to the corporation which will impair the value of those shares.    The damage to them is the same as to all other shares, the rights of the shareholder which have been injured are derivative rights, and the remedy should lie in a suit by the corporation.

We have not as yet considered the effect of the alleged contract with the plaintiff's testator, for that relates only to continuing business relations with the corporation, and our discussion has thus far been confined to allegations of injury to credit and business by affirmative acts of the defendant.

Although we have discussed affirmative acts of interference at some length, the gravamen of plaintiff's complaint is that defendant ceased to do business with the Pearsall Company.    Her argument concedes that usually a person enjoys an absolute privilege of dealing or refusing to deal with another.    But it is contended that, in view of the alleged contract with plaintiff's testator, and in view of the defendant's purpose to coerce plaintiff into selling her shares, the defendant owed her a duty not to impair their value by ceasing to sell its products to her. corporation.    In support thereof numerous cases are cited, among others, American Bank & Trust Co. v. Federal Reserve Bank, 256 U. S. 355, 41 S. Ct. 499, 65 L. Ed. 983; Aikens v. Wisconsin, 195 U. S. 194, 25 S. Ct. 3, 49

L. Ed. 154; Tuttle v. Buck, 107 Minn. 145, 119 N. W. 946, 22 L. R. A. (N. S.) 599, 131 Am. St. Rep. 446, 16 Ann. Cas. 807; Rorabach v. Motion Picture & Co., 140 Minn. 481, 168 N. W. 766, 169 N. W. 529, 3 A. L. R. 1290; Hutton v. Watters, 132 Tenn. 527, 179 S. W. 134, L. R. A. 1916B, 1238, Ann. Cas. 1916C, 433; Boggs v. Duncan Schell Furniture Co., 163 Iowa, 106, 143 N. W. 482, L. R. A. 1915B, 1196; Davis v. New England R. Pub. Co., 203 Mass. 470, 89 N. E. 565, 133 Am. St. Rep. 318, 25 L. R. A. (N. S.) 1024.

[8, 9] Without analyzing these authorities in detail, it is sufficient to point out that they are all distinguishable, in that in them the defendants acted affirmatively, either in their own dealings with plaintiff, as in the Federal Reserve Bank Case, or in interfering with the plaintiff's expectancy of dealing with a third party, as in most of the cases cited. A person has the privilege of dealing with third parties, and the right that others shall not without justification interfere with his exercise of that privilege. See Cook, 27 Yale L. J. 779. But here the defendant has not interfered with any of the legal relations between the plaintiff and her corporation. Her rights and privileges with respect to her corporation are intact, though of less value, because of defendant's refusal to deal with it.

In the cases cited the motive which animates the defendant has been held to be material, and to make interference tortious, if the motive was not a sufficient justification. As Mr. Justice Holmes has explained in Aikens v. Wisconsin, 195 U. S. 194, 204, 25 S. Ct. 3, 5 (49 L. Ed. 154), what will be recognized as a justification rests upon "principles of policy," and may naturally be expected to vary with respect to different types of conduct and in different jurisdictions. But no case has decided, so far as we are aware, that the refusal of one individual to deal with another requires justification. A private trader is privileged to exercise his own pleasure as to parties with whom he will deal. Fed. Trade Comm. v. Raymond Co., 263 U. S. 565, 573, 44 S. Ct. 162, 68 L. Ed. 448, 30 A. L. R. 1114; Great Atlantic & Pac. Tea Co. v. Cream of Wheat Co. (D. C.) 224 F. 566, 574, affirmed 227 F. 46, 48 (C. C. A. 2). To make his motive in exercising this privilege the subject of judicial inquiry would be a step beyond what the courts have yet done, or what we think they can wisely do in the present stage of our economic order. Booth v. Burgess, 72 N. J. Eq. 181, 190, 65

A. 226; Heywood v. Tillson, 75 Me. 225, 232, 46 Am. Rep. 373; People's Land & Mfg. Co. v. Beyer, 161 Wis. 349, 154 N. W. 382, L. R. A. 1916B, 813.

[10] Even the most ardent advocates of the principle that the intentional infliction of temporal harm requires a justification have stopped short of asserting that it applies to harm resulting from nonaction, in the absence of facts creating a duty to act. Ames, 18 Harv. Law Rev. 411; Harno, 30 Yale Law J. 145, 156. The defendant owed the Pearsall Company no duty to continue dealing with it, in the absence of a contract so to do, even though its motive in refusing was malicious; i. e., an intention to destroy the Pearsall Company's business without benefit to defendant. But, even if it were conceded to be a tort to the Pearsall Company to decline without a justifiable motive to deal with it, this would not, for reasons already discussed, be an injury to the plaintiff, except in respect to her derivative or corporate rights. Hence her remedy would still lie through a suit by the corporation.

[11] Nor does the allegation of a contractual duty to plaintiff's testator aid her. If it be assumed that the allegations of the complaint are sufficient to charge a contractual duty owing by defendant to the Pearsall Company, despite the indefiniteness of the terms of such a contract, and despite the fact that it was made with a shareholder, not with the corporation, nevertheless a breach of that duty would give a right of action to the corporation, not to its shareholders. Nor can it be maintained that one who breaks a contract with a corporation commits a tort upon its shareholders. If it be assumed that the defendant's contract was with plaintiff's testator, a breach by defendant of this contract would not be a tort against plaintiff, individually or as executrix. And the allegation that this defendant's conduct was pursuant to a conspiracy between defendant and its own directors adds nothing. It is but a reiteration in another form of the allegation of nonfeasance by the defendant corporation, which can act only through its officers or agents. See United States v. American Naval Stores Co. (C. C.) 172 F. 455, 463; Stockton v. American Tobacco Co., 55 N. J. Eq. 352, 372, 36 A. 971; Locker v. Am. Tobacco Co., 195 N. Y. 565, 88 N. E. 289.

We are satisfied that the complaint states no cause of action in tort in the plaintiff. The judgment is affirmed.