W. CLAY JACKSON ENTERPRISES, INC. Flexicore of Puerto Rico, Inc. Carolina Dredging Corp., W. Clay Jackson, Hilda Jackson, Thomas Box, Plaintiffs,

v.

GREYHOUND LEASING & FINANCIAL CORPORATION, the Home Insurance Company, Defendants.

Civ. No. 75–786.

United States District Court, D. Puerto Rico.

Jan. 3, 1979.

González & Torres, Santurce, P. R., Manuel Moreda Toledo, Wallace González-Oliver, San Juan, P. R., Harvey B. Nachman, Santurce, P. R., for plaintiffs.

Francis, Doval, Colorado & Carlo, San Juan, P. R., Robert Ehrenbard, Howard M. Loeb, New York City, for defendants.

### OPINION AND ORDER

TORRUELLA, District Judge.

On November 14, 1978 the Defendants filed a Motion for partial summary judgment contending that the claims of Plaintiffs Hilda Jackson, Thomas Box and Robert S. Griggs are barred by the applicable one-year statute of limitations. 31 L.P. R.A., 5298. In said Motion, Defendants also requested the dismissal of certain claims of W. Clay Jackson, Hilda Jackson, Thomas Box and Robert S. Griggs on the ground that said claims are duplicative of the claims alleged by the Corporate Plaintiffs and do not state cognizable causes of action. Three days thereafter, the Defendants filed an additional Motion for partial summary judgment, seeking the dismissal of the re-

**668**

maining claims of Plaintiffs W. Clay and Hilda Jackson on grounds that no property of these Plaintiffs was ever attached in the civil litigations which gave rise to the present suit.

The Court will discuss each of the issues separately.

## I. The Aspect of Limitations

The Complaint in this case alleges that in August of 1966, Boothe Leasing Corporation of Puerto Rico ("Boothe") commenced two actions against W. Clay Jackson Enterprises, Inc. ("Enterprises"), Carolina Dredging Corporation ("Carolina") Flexicore of Puerto Rico ("Flexicore") and the individual Jackson in the Superior Court of Puerto Rico. During the pendency of said actions, certain properties owned by Enterprises, Flexicore, Carolina and Jackson were attached. All of the attachments were perfected not later than the year 1967. On May 9, 1975 the Supreme Court of Puerto Rico affirmed the Judgment of the Superior Court dismissing the actions wherein the attachments were made. The present suit was commenced on July 11, 1975, alleging that damages were caused to Plaintiffs by the attachments made in the 1966 actions.

Defendants argue that an action for wrongful attachment by a person not a party to the attachment action prescribes one year after the non-party acquired knowledge of the attachment. Defendants contend that Plaintiffs Hilda Jackson, Box and Griggs were not parties to the attachment actions and that the instant suit was filed more than one year after they acquired knowledge of the attachments. Hence, the proposition is advanced that the claims of these Plaintiffs have been brought outside the one-year period prescribed in 31 L.P.R.A. 5298(2).

Defendants' arguments are erroneous. In *Fresh-O-Baking Co. v. Molinos de P.R.,* 103 D.P.R. 509 (1975), a creditor initiated

collection proceedings against Fresh-O-Baking Co. and obtained an order of attachment against certain of debtor's assets. The attachment was executed on May 5, 1965. Thereafter, on October 13, 1967, the owner of certain equipment which was deposited in a structure adjacent to the embargoed premises, as well as of certain machinery which was used at debtor's bakery, initiated an action for damages against the attacher. The Court *a quo* dismissed the action because more than one year had elapsed between the date of the attachment and the commencement of suit.

In affirming the Superior Court's Judgment, the Supreme Court noted, at the outset, that the complainant never initiated independent third-party claim proceedings,[1] (103 D.P.R. at 513), but waited more than two years after the date of execution before filing an action for damages. The Supreme Court held that the action was barred by the applicable statute of limitations because, since the Plaintiff was not a party to the original action, he did not have to wait for its termination but rather was bound to pursue his rights within one year after having acquired knowledge of the attachments.

■ In our opinion, the rationale for the Supreme Court's pronouncement in *Fresh-O-Baking,* supra, lies in the fact that, ordinarily, the right to recovery of an owner of property attached in a proceeding to which he is not a party is in no way dependent upon the outcome of the controversy. In ordinary situations, the wrongfulness of the attachment is known at the outset, and need not await an elucidation of the rights and liabilities of the party who may have been erroneously deemed to be the owner of the property. Such an interpretation not only finds support in the Supreme Court's own language in *Fresh-O-Baking,* but is also compelled by the terms of article 1868 of the Civil Code of Puerto Rico, 31 L.P. R.A. 5298, which provides in part:

1. The Supreme Court has emphasized the speedy and simple nature of the third-party proceedings established in 32 L.P.R.A. 1171–1190, the main objective of which is "to determine, in a speedy manner, but with full guaran-

tees for all interested parties, whether the personal property attached as belonging to a specific person, belongs to another claiming it as his own." *Rona Electric Co. v. Garriga,* 99 P.R.R. 914, 921 (1971).

"The following prescribe in one year:

1.    . . .

2. Actions to demand civil liability for grave insults or calumny, and for obligations arising from fault or negligence . . . , *from the time the aggrieved person had knowledge thereof.*" (Emphasis added).

■ As a general rule, a third party whose property has been erroneously attached has a cause of action immediately upon learning of the attachment, regardless of the outcome of the main action. On the other hand, the litigant whose property is attached need await a final judicial determination portending the illegality of the embargo, which generally constitutes a prerequisite to the institution of the *ex delicto* action based on Article 1802 of the Civil Code. 31 L.P.R.A. 5141. Hence, the decision in *Fresh-O-Baking,* supra, constitutes an exception to the general postulate of Puerto Rican law that a cause of action for wrongful attachment arises when there is a firm, final and unappealable judgment in the suit in which the attachment was made. See, *Martí v. Hernández,* 57 P.R.R. 804 (1940).

■ After evaluating the circumstances of this case, we opine that they do not warrant the application of the exceptive doctrine of *Fresh-O-Baking,* supra. Neither Plaintiff Box, Griggs, or Hilda Jackson [2] could be said to have had standing to initiate third party claim proceedings concerning the attached property, insofar as they do not claim that their property was erroneously seized in 1967. We fail to see how these Plaintiffs could assert grounds for recovery had the Defendants prevailed in the Superior Court litigations. Their claims for damages are predicated upon the al-

leged wrongfulness of Defendants' actions and, in that sense, they stand on the same footing as the other Plaintiffs herein: their causes of action accrued when the Supreme Court of Puerto Rico affirmed the dismissal of Boothe's complaints. Defendants would have us hold that non-parties who are aggrieved by an attachment are compelled to file suit while the acts complained of are not yet actionable. Neither case law nor logic support such an argument. Cf. *Rivera Meléndez v. The Citizens and Southern National Bank,* Civ. 75–495 (D.C.P.R. February 26, 1976).

Defendants' request for dismissal of these claims on grounds of untimeliness is DENIED.

## II. The Overlapping Corporate and Individual Claims

The first three causes of action in Plaintiffs' Second Amended Complaint basically set forth a claim of loss of business, properties and profits by the corporate Plaintiffs. In the fourth cause of action it is alleged, *inter alia,* that Plaintiff W. Clay and Hilda Jackson, as a conjugal partnership holding 90% ownership of the three corporate Plaintiffs were "deprived of all of their investments in said companies which, . . . , were ruined by the joint wrongful actions of the Greyhound companies." The fifth cause of action claims in part that Plaintiff Thomas Box, as 5% owner "of all of the shares in Enterprises, in Flexicore and in Carolina [3] . . . was deprived of all of his investments in said companies." [4] In turn, the sixth cause of action solely alleges that Plaintiff Robert S. Griggs was deprived of his 5% investment in the corporate Plaintiffs. [5]

---

2. As member of the conjugal partnership with W. Clay Jackson, Plaintiff Hilda's situation is dissimilar from the other two individual Plaintiffs'.

3. In Plaintiffs' proposed third amended complaint, which has been rejected by the Court, Plaintiff Box alleges that his 5% ownership was limited to Enterprises. Said variation is not determinative for purposes of our present endeavor.

4. It is also alleged therein that this Plaintiff "lost his credit and his business reputation" and "was exposed to ten years of suffering and mental anguish."

5. The purported Third Amended and Supplemental Complaint limits Griggs' claim to a loss of investment in Enterprises alone.

Defendants contend that the deprivation of investment alleged by the individual Plaintiffs in the fourth, fifth and sixth causes of action is equivalent to certain of the corporate losses alleged in the first three causes of action. Thus, Defendants contend that the claims of the individual Plaintiffs are duplicative of the corporate claims and may not be asserted.

█ It is a well established principle of corporate law, and Plaintiffs so concede, that an individual stockholder who alleges diminution of the value of his investment by reason of an injury to the corporate entity does not state a cognizable claim. *Loeb v. Eastman Kodak Co.,* 183 F. 704 (C.A. 3, 1910); *Green v. Victor Talking Machine Co.,* 24 F.2d 378, 380 (C.A. 2, 1928).[6] The Plaintiff in *Green* was the sole stockholder of a corporation who alleged that defendant had sought to cause employees of Plaintiff's corporation to leave it, disclosed confidential information to competitors, damaged the corporation's credit, interfered with its business and refused to deal with it. The Plaintiff alleged that by reason of said acts "the value of [the corporation] as a going concern was destroyed, and all the benefits accruing to plaintiff through her ownership of its stock were lost." 24 F.2d at 380.

In affirming the dismissal of the complaint for failure to state a cause of action in tort, the Court stated:

"The allegations of [the complaint] charge a breach of duty owing to the corporation rather than to its shareholders. The shareholders' rights are derivative, and, except through the corporation, the shareholders have no relation with one who commits a tort against the corporation's right.

"When there are numerous shareholders, it is apparent that each suffers relatively, depending upon the number of shares he owns, the same damage as all the others, and that each will be made whole if the corporation obtains restitution or compensation from the wrongdoer. Obviously it is sound policy to require a single action to be brought by the corporation, rather than to permit separate suits by each shareholder . . . Even when all the stock is owned by a sole shareholder, there seems no adequate reason to depart from the general rule that the corporation and its shareholders are to be treated as distinct legal persons. Therefore even a sole shareholder has no independent right which is violated by trespass upon or conversion of the corporation's property. Only his 'corporate rights' have been invaded, and consequently he cannot sue the tort-feasor in an action at law." 24 F.2d 380–381 (citations omitted).

The above-quoted principle has been reiterated in subsequent court decisions. In *Kaufman v. Dreyfus Fund, Inc.,* 434 F.2d 727 (C.A. 3, 1970), a mutual fund shareholder was denied the right to recover damages to the value of his shares by reason of alleged violations of the antitrust and security laws. The Court of Appeals for the Third Circuit stated:

"A stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets. In this situation, it has been consistently held that the primary wrong is to the corporate body and, accordingly, that the shareholder, experiencing no direct harm, possesses no primary right to sue." 434 F.2d at 732 (citations omitted).

█ It is thus clear that stockholders cannot maintain actions to redress injuries to the corporation, even though those injuries may result in depreciation or destruction of the value of stock. *Brictson v. Woodrough,* 164 F.2d 107 (C.A. 8, 1947); Cf.

---

**6.** The rule announced in *Green* is "uniformly applied as a general principle of law by both state and federal courts." *Henry v. General Motors Corp.,* 236 F.Supp. 854, 856 (N.D.N.Y.) aff'd 339 F.2d 887 (C.A. 2, 1964).

*Scharmer v. Carrollton Mfg. Co.*, 525 F.2d 95 (C.A. 6, 1975); *Kolb v. Chrysler Corporation*, 357 F.Supp. 504 (E.D.Wis., 1973); see, 13 *Fletcher Cyclopedia Corporation*, § 5913 (1970). The Supreme Court of Puerto Rico has adhered to that principle, insofar as it has not permitted stockholders to vindicate rights which properly belong to the Corporate entity. See, *Vélez v. Nieves,* 64 P.R.R. 133 (1944). However, the general principle is not to be applied mechanically, because it has also been established that a stockholder may sue to redress "direct" injuries to himself regardless of whether the same violation injured the corporation. *Buschmann v. Professional Men's Association,* 405 F.2d 659 (C.A. 7, 1969); *Dann v. Studebaker-Packard Corporation,* 288 F.2d 201 (C.A. 6, 1961); *Kolb v. Chrysler Corporation,* supra.

▇ The foregoing makes it clear that the individual Plaintiffs' allegations of the fourth and fifth causes of action, which assert claims for loss of credit and business reputation, suffering and mental anguish, are distinct and separate from the claims of the corporate Plaintiffs and, as such, must survive to the extent otherwise maintainable. See, *Feliciano v. Mercantil Cedeño, S. en C.,* 85 P.R.R. 138 (1962). However, we are bound to dismiss the individual Plaintiffs' claims for loss of investment. The diminution in value of a stockholder's investment is a concomitant of the corporate injuries resulting in lost profits. *A fortiori,* any redress obtained by the corporations would run to the benefit of their stockholders, and to permit the latter to proceed with those claims would permit a double recovery.

In view of Plaintiffs' failure to genuinely controvert the material facts relied upon by movants, and there being no just reason for delay, the claims of loss of investment of Plaintiffs W. Clay Jackson, Hilda Jackson and Thomas Box, set forth in paragraphs 6.3 and 7.2 of the Second Amended Complaint are hereby dismissed. It appearing that Plaintiff Griggs has circumscribed his allegations to loss of corporate investment, the sixth cause of action of the Second Amended Complaint must be and the same is hereby dismissed in its entirety.

The Clerk of the Court is instructed to enter Judgment in accordance with this opinion.

The individual Plaintiffs will be precluded at trial from introducing evidence in support of the aforementioned claims.

III. *The Remaining Claims of Plaintiffs W. Clay Jackson and Hilda Jackson*

The only personal property of Plaintiffs W. Clay and Hilda Jackson alleged to have been attached by the Defendants are certain "Option and Purchase Contracts that Plaintiffs Jackson and Enterprises had made with Lomas & Nettleton Financial Corporation and Centex Corporation". Said options and rights were allegedly attached pursuant to an Order of the Superior Court dated June 26, 1967 (Par. 2.12 of Second Amended Complaint).

▇ Defendants have submitted several exhibits tending to demonstrate that no property of these individual Plaintiffs was ever attached in the Superior Court litigations. According to Defendants, the terms of the Superior Court's order of June 26, 1967 (Exh. B) make it clear that the option and rights involved were those which the *Corporate* Plaintiff W. Clay Jackson Enterprises, Inc. may have had under the purchase and sale agreement with Vistamar, Inc., Lomas & Nettleton Financial Corporation and Centex Corporation.

The movants have also submitted an excerpt from a deposition of Plaintiff Hilda Jackson (Exh. C), wherein she testified that all of the attachments made were of properties of the corporate Plaintiffs and that none of their personal properties were attached. Furthermore, there is a document on file wherein the Clerk of the Superior Court, San Juan Part, indicates that, from the file in Civil Number 66–4141 it does not appear that any writ of attachment was ever issued in connection with the Order of June 26, 1967.

Defendants contend that the foregoing factors compel us to dismiss the claims of

all the individual Plaintiffs.[7] It is argued that in order to sustain an action for wrongful attachment it must be alleged and proved that the property was actually attached; that the action brought against Plaintiff ended by a final and unappealable judgment in his favor, and that damages were suffered.[8] Defendants contend that the individual Plaintiffs have failed to satisfy the first of the aforesaid requirements and that they have no cause of action for wrongful attachment.

A copy of the option agreement between Lomas & Nettleton Financial Corporation and W. Clay Jackson has been submitted by the opposing parties. A perusal of the same tends to indicate that the right to exercise the option belonged to W. Clay Jackson and not to Enterprises. Enterprises was referred to as "seller" in the agreement, while Sections 6 and 7 thereof name "W. Clay Jackson" as holder of the option rights. Indeed, W. Clay Jackson signed the agreement in his personal capacity indicating "his assent thereto and [agreeing] to be bound by all the terms and provisions thereof which are applicable to him." (Plaintiffs' Exh. 1, at p. 13).

Whether or not W. Clay Jackson[9] was restrained in the exercise of his option rights is a genuine issue of material fact as to which the record fails to provide conclusive answers. The Superior Court's Order, which was notified to Plaintiffs' counsel, could arguably be understood as an order in the nature of an injunction pursuant to the Puerto Rico Rules of Civil Procedure, 32 L.P.R.A. App. II R. 56.5, and as such may have become effective upon its issuance. Whether it did, and whether it caused compensable damages, is not our province to decide. Considering the stringent standards which we are bound to apply to this matter, we are precluded from resolving these doubts. That duty belongs to the trier of fact and not to the Court on a motion for summary judgment. *Thyssen Plastik Anger Kg. v. Induplas, Inc.*, 576 F.2d 400 (C.A. 1, 1978); *Hahn v. Sargent*, 523 F.2d 461, 464 (C.A. 1, 1975).

■ The fact that the other individual Plaintiff was not a party to the Superior Court's suits and that none of his personal property was therein attached does not *per se* justify the dismissal of his claims at this time.[10]

In *Martí v. Hernández*, 57 P.R.R. 804 (1940) the Supreme Court of Puerto Rico stated that the Plaintiff in a wrongful attachment action must allege and prove, *inter alia*, that his property has been attached. However, we do not believe that this *dictum* constitutes an inflexible rule of blanket applicability.

The action to recover damages by reason of an alleged wrongful attachment is an *"ex delicto"* action based on Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. 5141,[11] which provides in its pertinent part:

"A person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done."

The "ample and embracing"[12] postulates embodied in the above-quoted provision have been described by the highest court of the Commonwealth as follows:

"According to the section in question [§ 1802 of Civil Code], which establishes

---

7. The "Additional Motion for Partial Summary Judgment" filed on November 17, 1978 was solely addressed to the claims of W. Clay and Hilda Jackson. However, the contentions therein advanced are also of relevance to the claims of the other individual Plaintiffs and Defendants so realized in their reply memorandum of December 6, 1978, at p. 8.

8. See, *Berríos v. International General Electric*, 88 P.R.R. 106 (1963).

9. And consequently, the conjugal partnership.

10. The claims of Plaintiff Robert S. Griggs have been dismissed on the grounds discussed in Part II of this Opinion.

11. *Berríos v. International General Electric*, 88 P.R.R. 106, 114 (1963), citing *Méndez v. E. Solé & Co.*, 62 P.R.R. 805 (1944); *Muñiz de León & Co. v. Melón Hnos. & Cía.*, 56 P.R.R. 314 (1940).

12. *Reyes v. Heirs of Sánchez Soto*, 98 P.R.R. 299 (1970).

one of the fundamental principles of our jurisprudence—that of Aquilian liability for personal acts—all damage, whether material or moral, gives rise to reparation if three requirements or elements are met: *first,* proof of the reality of the damage suffered; *second,* a causal relation between the damage and the action or omission of another person; and *third,* said act or omission is negligent or wrongful. That precept '. . . does not admit a limitation or exception of any kind; and consequently, the wrongdoer who is guilty of fault or negligence, whatever the consequences may be, is bound to repair the wrong, that the victim be delivered from the effects of the damage suffered.' Thus, the manner how damage is caused is immaterial. And, by the same token, material as well as purely moral damages are recoverable in our jurisprudence." *Hernández v. Fournier,* 80 P.R.R. 94, 97 (1957).

In consonance with the principles outlined above, the Supreme Court of Puerto Rico has expressly refused to blindly encase damage actions within mechanical patterns, see, *Gierbolini v. Employers Fire Ins. Co.,* 104 D.P.R. 853 (1976), and has given determinative predominance to the three requirements outlined in *Hernández,* supra. Thus, in *Alum Torres v. Campos del Toro,* 89 P.R.R. 299 (1963), the Court made it clear that the subsistence of actions like the one at bar is not necessarily dependent upon strict fulfillment of the requirements insisted upon by Defendants herein. The Court in *Alum Torres* held that, in the presence of extraordinary circumstances, a Plaintiff may bring an action for damages caused by a wrongful attachment even though the action wherein the attachment was made was decided in favor of the attacher. Likewise, in *Berríos v. International General Electric,* supra, the attachment on the property of Plaintiff was never executed. However, after quoting from *Hernández v. Fournier,* supra, the Supreme Court stated:

"We are of the opinion that the facts in this case irrespective of whether or not the attachment was completed, give rise to the imposition of liability under the letter of § 1802. We have here a situation in which there have been unjustified acts on the part of the appellant showing carelessness or negligence, and furthermore damages have been proved." 88 P.R.R. at 115.

Whether the three crucial elements of recovery are satisfied by Plaintiff Box is a question which will entirely depend upon the evidence at trial. Suffice it to say that, notwithstanding this Plaintiff's peculiar situation in the events alleged in this case, the law of Puerto Rico does not deprive him of his day in Court. See, generally, *Reyes v. Heirs of Sánchez Soto,* supra; *Pérez Escobar v. Collado,* 90 P.R.R. 785, 789–790 (1964); *Feliciano v. Mercantil Cedeño S. en C.,* supra; *Ramos v. Carlo,* 85 P.R.R. 337 (1962); *Correa v. P.R. Water Resources Authority,* 83 P.R.R. 139 (1961), Cf. *Fonseca v. Oyola,* 77 P.R.R. 496 (1954); *Díaz v. Distribuidores R.C.A. Víctor Inc.,* 47 P.R.R. 530 (1934).

Defendants' request for dismissal is DENIED on the aforementioned grounds.

IT IS SO ORDERED.