# United States Court of Appeals
## For the First Circuit

No. 01-1097

MANUEL GARCÍA-GUZMÁN, et al.,

Plaintiffs, Appellants,

v.

ELENA VILLOLDO, et al.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Justo Arenas, U.S. Magistrate Judge]

Before

Selya Circuit Judge,

Gibson, Senior Circuit Judge,*

and Lipez, Circuit Judge.

Antonio J. Amadeo-Murga for appellants.

Enrique Peral, with whom María T. Figueroa and Muñoz Boneta
González Arbona, Benítez & Peral, were on brief, for appellees.

December 3, 2001

* Hon. John R. Gibson, of the Eighth Circuit, sitting by designation.

**LIPEZ, Circuit Judge**.  Manuel García-Guzmán and his wife, Maria Emilia García-Urgüelles, appeal from the order of the district court granting summary judgment in favor of appellees, the Villoldos.  The district court determined that García-Guzmán's[1] claim of wrongful attachment was barred by the one-year statute of limitations set forth in Article 1868 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5298.  The court reasoned that García-Guzmán was not a party to the proceeding in which his property was attached, and therefore he should not have waited for the entry of a final judgment in the underlying litigation before filing his wrongful attachment action.  We review the grant of summary judgment de novo, see Megwinoff v. Banco Bilbao Vizcaya, 233 F.3d 73, 74 (1st Cir. 2000), and conclude that the district court's application of the statute of limitations was erroneous.

## I.

This case arises out of a dispute between the Villoldos and García-Guzmán's parents, the Garcías, over a business jointly owned by the two families.  In 1991, the relationship between the families soured, and they filed lawsuits against

---

[1] In the interests of clarity and brevity, we omit any further references to García-Guzmán's wife, appellant García-Urgüelles.  Our holding is, of course, equally applicable to her.

each other (the "1991 Cases").  The 1991 Cases were consolidated and assigned to Judge Fusté.  García-Guzmán was not named as a party in either case.

Eventually, the Garcías and the Villoldos agreed to settle their differences.  On September 18, 1992, they executed an agreement (the "Settlement Agreement") providing that the Garcías would buy the Villoldos' stock in the business for $650,000, to be paid in a series of installments.  García-Guzmán joined his parents in signing the Settlement Agreement, although it was not then clear in what capacity he signed.  The terms of the Settlement Agreement were incorporated into a judgment disposing of the 1991 Cases (the "1992 Judgment").

Although the Garcías began to make the agreed-upon payments, they defaulted after paying slightly more than $150,000.  Invoking Judge Fusté's continuing authority to enforce the 1992 Judgment, the Villoldos initiated attachment proceedings against the Garcías in March, 1994, but the action was suspended when the Garcías filed for bankruptcy.  The Villoldos then turned to García-Guzmán for satisfaction of the debt.  On September 14, 1994, they obtained an order from Judge Fusté authorizing the attachment of García-Guzmán's personal property.  Instead of executing the attachment, however, the Villoldos filed a separate action against García-Guzmán on

November 19, 1994, alleging breach of contract and seeking to enforce the terms and conditions of the Settlement Agreement (the "1994 Action"). Leaving aside details not relevant here, the crux of the Villoldos' claim was that García-Guzmán was a full signatory to the Settlement Agreement, jointly responsible for his parents' debt to the Villoldos. García-Guzmán moved to dismiss the complaint on the ground that he had not assumed any obligation to purchase the Villoldos' stock. Emphasizing that he was not a party to the 1991 Cases that gave rise to the Settlement Agreement, García-Guzmán argued that he had signed the Agreement only in his representative capacity as manager of the business being sold (which was a party in the 1991 Cases), and that he was obligated in a personal capacity only with respect to a non-compete covenant set forth in the Agreement.

The district court never addressed the merits of those arguments, ruling instead that the Villoldos' claim against García-Guzmán should have been addressed to Judge Fusté in the form of a motion to enforce the Settlement Agreement. The court reasoned that, since the terms of the Settlement Agreement were incorporated into the 1992 Judgment, a breach of the Agreement would be a violation of the Judgment itself. Therefore, the court concluded, Judge Fusté retained jurisdiction over the 1991 Cases to enforce the terms of the Settlement Agreement. Rather

than dismiss the Villoldos' complaint against García-Guzmán, however, the court simply consolidated the 1994 Action with the 1991 Cases and transferred it to Judge Fusté.

On April 19, 1995, Judge Fusté dismissed the 1994 Action. In an order entered the same day, he explained his ruling:

> The 1994 suit is not a separate claim. It only involves a claim for execution of judgment which results from the earlier judgment in the two consolidated cases [the 1991 Cases]. . . . The 1994 civil action is duplicitous and there is no reason, legal or otherwise, for it to be litigated separately as an independent civil action.

Judge Fusté apparently believed that García-Guzmán already was a party to the 1991 Cases – at least for enforcement purposes – by virtue of his participation in the Settlement Agreement and the incorporation of that Agreement into the 1992 Judgment. Thus, there was no need for a separate action against him. Any obligation García-Guzmán owed to the Villoldos under the Settlement Agreement could be enforced by post-judgment motions for execution of the 1992 Judgment.

As the Villoldos recognized, Judge Fusté determined implicitly in his order that García-Guzmán was, in fact, responsible for his parents' debt. Accordingly, the Villoldos proceeded to execute the writ of attachment issued the previous September against García-Guzmán's personal property. On June

-6-

21, 1995, they attached $6,862 held in his bank account.  They also obtained (but did not execute) a second writ of attachment against García-Guzmán, this time authorizing the attachment of his real property.

García-Guzmán immediately filed an emergency motion seeking return of the attached bank funds.  Judge Fusté initially responded on July 5, 1995, with the following margin order:

> The court has examined – once again – the settlement agreement and it can be interpreted as we did earlier to the effect that García-Guzmán joined his parents in guaranteeing the payment of the stipulated accounts.  The motion for execution was duly notified and this appears to be a late opposition to it.  The Villoldos will express their views in not more than 10 pages . . . .

Then, in an order entered on January 31, 1996, Judge Fusté denied García-Guzmán's request for return of the attached bank funds on the ground that García-Guzmán was obligated by the terms of the Settlement Agreement and the 1992 Judgment to satisfy the debt owed to the Villoldos.

García-Guzmán appealed, and we held in an unpublished opinion that the Settlement Agreement was ambiguous as to the extent of his responsibility for the debt to the Villoldos. García-Guzmán v. Villoldo, No. 96-1215 (1st Cir. Feb. 14, 1997) (unpublished).  Accordingly, we vacated the January 31 order and

remanded for a factual inquiry into the parties' intent.  Judge Fusté held an evidentiary hearing and, based on the evidence presented there, determined that García-Guzmán "was asked to sign, not as a full guarantor, but only in reference to the covenant not to compete."  Therefore, he concluded, "the orders that were originally entered against Mr. García Guzmán for execution of judgment should be, for all purposes, vacated."  On February 1, 1999, Judge Fusté entered judgment "dismissing the complaint" against García-Guzmán.  The Villoldos did not appeal.

On June 15, 1999, García-Guzmán filed the instant diversity action for wrongful attachment and malicious prosecution, seeking damages allegedly caused by the attachment of his bank account and the order of attachment obtained – but never executed – against his real property.  The parties consented to proceed before a magistrate judge.  See 28 U.S.C. § 636(c).  Several months later, they filed cross-motions for summary judgment on the claim of wrongful attachment.  The Villoldos argued, as relevant here, that the claim was time-barred because García-Guzmán's complaint was filed more than one year after the date on which he became aware of the relevant attachments.  The magistrate judge agreed, reasoning that García-Guzmán was not a party to the 1991 Cases, and therefore the "applicable statute of limitations is one year from the day

-8-

[on] which [García-Guzmán] knew of the attachment (i.e., June of 1995)." The judge rejected García-Guzmán's argument that he had been "brought into" the 1991 Cases in 1994, when the Villoldos obtained authorization to attach his property to enforce the 1992 Judgment. "[T]hroughout all the proceedings," he pointed out, "García-Guzmán has argued that he was not a party to the original litigation, and in fact, on the basis of that argument he was able to avoid liability under the settlement agreement." Thus, the judge concluded, the fact that Judge Fusté's February 1, 1999, judgment purported to "dismiss" a "complaint" against García-Guzmán was immaterial. The only complaint ever filed against García-Guzmán was in connection with the 1994 Action, and was dismissed in April 1995 – before the Villoldos attached García-Guzmán's personal property, and long before Judge Fusté's decision in 1999.

The magistrate judge granted the Villoldos' motion for summary judgment on García-Guzmán's claim of wrongful attachment. García-Guzmán then obtained a voluntary dismissal of his remaining claim of malicious prosecution, and the magistrate judge entered judgment dismissing the complaint in its entirety. This appeal followed.

**II.**

Claims of wrongful attachment are subject to a one-year statute of limitations applicable to all actions for "obligations arising from . . . fault or negligence." 31 L.P.R.A. § 5298. The timing of the statute of limitations depends on when the substantive elements of the claim are present. Thus, before we can address the statute of limitations question in this case, we need to understand what, in general, makes an attachment "wrongful" under Puerto Rico law, and how such wrongfulness ordinarily is established. We then can apply those general principles to the facts here to determine when the statute of limitations began to run on García-Guzmán's claim.

Rule 56 of the Puerto Rico Rules of Civil Procedure provides that the plaintiff in any action may move, before or after judgment is entered, for a provisional attachment of the defendant's property to "secure satisfaction of the judgment." 32 L.P.R.A. App. III R. 56.1. The validity of such an attachment depends on the validity of the plaintiff's claim against the defendant-attachee. If the court determines that the plaintiff's claim against the defendant has no merit, it follows that she has no right to the defendant's property, and that the attachment was unwarranted. The plaintiff then may be

-10-

liable to the defendant for the damages caused by the attachment.[2]

Liability for a wrongful attachment is based on Article 1802 of the Civil Code, which provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31 L.P.R.A. § 5141. A wrongful attachment claim, therefore, has three elements: an act or omission, damages, and "fault or negligence." The first two elements are fairly straightforward. The relevant "act" is the attachment of the defendant's property, and, as Rule 56 recognizes, even a temporary attachment can cause damage. The defendant's credit may be adversely affected; his business may fail; he may suffer emotional distress. See, e.g., Feliciano v. Mercantil Cedeño,

---

[2] In the usual case, Rule 56 requires a plaintiff seeking to attach a defendant's property to file a bond "sufficient to secure all the damages arising from" the attachment. 32 L.P.R.A. App. III R. 56.3. However, the bond requirement is waived in cases where it seems especially likely that the plaintiff does, in fact, have a valid claim against the defendant and his property. Thus, Rule 56.3 provides that the plaintiff may obtain an attachment without bond if, inter alia, the plaintiff alleges under oath that the defendant owes her a legally enforceable obligation, or – as is the case here – the attachment "is sought after judgment is entered." In those circumstances, the absence of a protective bond means that the plaintiff is directly liable for any damages sustained by the defendant in the event that the attachment is deemed wrongful. See M. Quilichini Sucrs., Inc. v. Villa Inv. Corp., 12 P.R. Offic. Trans. 401, 406, 408 (1982).

S. en C., 85 P.R.R. 138 (1962) (recognizing that damages are available to owner of business wrongfully attached for damages caused to good name of business and for mental anguish and moral damages suffered by owner).

The third element – that the damage was caused by the attaching party's "fault or negligence" – is more complicated. In the usual case, the question whether the attachment was "wrongful" is answered by reference to the outcome of the dispute between the parties. If the plaintiff-attachor prevailed, it follows that the attachment was warranted and the defendant-attachee has no cause for complaint. On the other hand, a judgment in favor of the defendant-attachee establishes that the plaintiff had no valid claim against the defendant or his property, and, consequently, that the attachment was in error. As the Supreme Court of Puerto Rico has explained:

> [T]here is no doubt that a person is guilty of fault who, to secure the result of an action which he is prosecuting against a specific person, requests and obtains of the court the attachment of the property of his adversary, which attachment afterward, either through improper preparation of the complaint or owing to the said complaint being groundless or frivolous, must be dissolved, after having caused considerable damage and prejudice to the credit or interests of the owner of the property attached.

-12-

<u>Cintrón</u> v. <u>Insular Indus. & Agric. Exposition Ass'n, Inc.</u>, 58 P.R.R. 820, 825 (1941) (quoting <u>Lowande</u> v. <u>Otero & Co.</u>, 14 P.R.R. 544 (1908)).

Thus, in order to prove that the damages arising out of an attachment were caused by the attaching party's "fault or negligence," the attachee typically must show, at a bare minimum, that "the action filed against him and in which action the attachment was decreed terminated by a final judgment in his favor." <u>Frigorífico M.H. Ortiz</u> v. <u>Quiles</u>, 101 P.R.R. 928, 941 (1973) (citing <u>Martí</u> v. <u>Hernández</u>, 57 P.R.R. 804 (1940)).[3] Such a claim is "contingent" in the sense that its "legal basis depends on the result of another action." <u>Rodón</u> v. <u>Franco</u>, 105 P.R.R. 424, 425 (1976). The attachment is not actionable unless and until the defendant obtains a final and unappealable judgment establishing that the plaintiff has no valid claim to his property, and, therefore, that the attachment was wrongful. <u>See</u> <u>Marti</u>, 57 P.R.R. at 806-07 (holding that cause of action "could not accrue before the judgment dismissing the complaint . . . against [the attachee] had been affirmed. A reversal of said judgment would have established the validity of the

_____

[3] This case does not require us to determine whether a favorable judgment in the underlying action is not only necessary, but also sufficient, to establish "fault" on the part of the attaching party.

-13-

attachment and deprived [the attachee] of any right to claim damages"). Accordingly, the cause of action accrues, and the statute of limitations begins to run, upon the entry of that final judgment.

Sometimes, however, an individual's property is attached by mistake in the course of litigation to which he is not a party. See Fresh-O-Baking Co. v. Molinos de Puerto Rico, Inc., 3 P.R. Offic. Trans. 708 (1975) (involving claim by non-party whose equipment was stored in defendant's bakery, which plaintiff attached). In such a case (as always), the attachment is valid only if the plaintiff's claim against the attachee is valid. The difference is that the plaintiff likely has not asserted any claim against the non-party whose property she attached. Therefore, in order to establish the plaintiff's "fault or negligence," all the non-party attachee must prove is that the property belongs to him and not the defendant. See id. at 715 n.4 (noting that non-party attachee could have availed himself of "fast and simple" independent claim proceeding specifically designed to "determine ' . . . whether the personal property attached as belonging to a specific person, belongs to another claiming it as his own'" (quoting Rona Electric Co. v. Garriga, 99 P.R.R. 914, 921 (1971))). Because such proof does not depend on a judicial determination of the merits of the

plaintiff's claim, the non-party attachee's cause of action accrues upon notice of the attachment, and the statute of limitations begins to run on that date. See id. at 725 (holding that non-party attachee "did not have to wait for the results of [the underlying litigation between plaintiff and defendant] to exercise his rights").

**III.**

Applying these general principles to the undisputed facts here, we conclude that the complaint was timely filed. The Villoldos attached García-Guzmán's property because they believed he was bound by the terms of the Settlement Agreement to satisfy his parents' debt. The validity of that attachment hinged on Judge Fusté's ultimate determination of García-Guzmán's liability under the Settlement Agreement. It was Judge Fusté's decision on February 1, 1999 – and not the attachments themselves – that provided the relevant evidence of the Villoldos' arguable "fault or negligence." Accordingly, it was not until that decision became final that García-Guzmán's claim for wrongful attachment accrued and the statute of limitations began to run.

The Villoldos seek to bring this case within the alternate rule recognized in Fresh-O-Baking for cases in which the attachee is not a party to the underlying litigation.

-15-

García-Guzmán, they argue, was not originally a party to the 1991 Cases, nor was he ever joined as a party during the course of the proceedings that began in 1994. Thus, "at the time of the attachment, in 1995, García-Guzmán knew that his funds had been attached in a legal action to which he was not included as a party."

That argument elevates form over substance. Throughout the relevant time period, García-Guzmán was consistently <u>treated</u> as a party, even if technically he was not one.[4] For example, Judge Fusté dismissed the 1994 Action against García-Guzmán (thus depriving him of official party status) because he believed, apparently, that García-Guzmán <u>already was a party</u> to the 1991 Cases. Similarly, this court assumed that García-Guzmán was a party when he appealed Judge Fusté's 1996 order denying his motion for return of the attached funds. For their part, the Villoldos not only treated García-Guzmán as if he were a party, but explicitly referred to him as a "defendant[]" in the 1991 Cases.

---

[4] Although we do not need to decide the issue here, we note that it is unlikely that García-Guzmán became a party to the 1991 Cases simply because he was bound by some of the terms of the Settlement Agreement and those terms were incorporated into the 1992 Judgment. <u>See</u> <u>Hispanic Soc'y of the New York City Police Dept., Inc.</u> v. <u>New York City Police Dept.</u>, 806 F.2d 1147, 1153 (2d Cir. 1986) (noting that participation in settlement agreement "cannot confer party status on a nonparty").

In focusing on García-Guzmán's lack of official party status, the Villoldos miss the point of the Fresh-O-Baking rule. The fact that the attachee was not a party to the underlying litigation matters because it usually signals that the plaintiff never asserted any claim against him. Under those circumstances, "the wrongfulness of the attachment is known at the outset, and need not await an elucidation of the rights and liability of the party who may have been erroneously deemed to be the owner of the property." W. Clay Jackson Enters., Inc. v. Greyhound Leasing & Fin. Corp., 463 F. Supp. 666, 669 (D.P.R. 1979) (explaining Fresh-O-Baking rule).

The same is not true here. The Villoldos knew that García-Guzmán owned the property they attached; they intended to attach his property in order to satisfy a debt for which they believed he was responsible. Their error lay, not in a factual mistake as to who owned what property, but in a legal misunderstanding of the extent of García-Guzmán's obligations under the Settlement Agreement. Thus, the wrongfulness of the attachments here became apparent only when Judge Fusté rejected the Villoldos' interpretation of the Settlement Agreement and their claim to García-Guzmán's property.

This case, therefore, is governed by the framework established in Martí v. Hernández and its progeny for cases in

which the claim for wrongful attachment is contingent on the outcome of pending litigation. See Martí, 57 P.R.R. at 806 (holding that cause of action for wrongful attachment will not lie while judgment rendered in attachee's favor at trial is pending on appeal). García-Guzmán's claim against the Villoldos depended on the outcome of the legal wrangling between the parties – whatever its precise contours – that began in 1994 and ended with the judgment on February 1, 1999. That judgment supplied the legal basis for García-Guzmán's claim of wrongful attachment; until it became final, "any question as to the validity or wrongfulness of the attachment remained in abeyance." Id.; see also W. Clay Jackson Enters., Inc., 463 F. Supp. at 669 (holding that claim for wrongful attachment accrued upon entry of judgment, even where non-parties' property had been attached, where merits of claim depended on outcome of litigation). The Villoldos would have us hold that the statute of limitations nevertheless required García-Guzmán to file suit years before the attachment first became actionable, simply because he was not officially a party to the 1991 Cases. Nothing in Fresh-O-Baking compels such an anomalous result. See W. Clay Jackson Enters., Inc., 463 F. Supp. at 669 (stating that "neither case law nor logic" supports the argument that "non-

parties who are aggrieved by an attachment are compelled to file suit while the acts complained of are not yet actionable").

We hold that the statue of limitations began to run when Judge Fusté's February 1, 1999, judgment became final. García-Guzmán's complaint was timely filed.[5]

**Judgment vacated.  Remanded for further proceedings consistent with the decision herein.  Costs are to be taxed in the appellants' favor.**

---

[5] Our holding is limited to the question whether García-Guzmán complied with the statute of limitations; we intimate no view as to the ultimate merits of his claim for wrongful attachment.  García-Guzmán contends that if, as we have determined, his claim is not time-barred, he is entitled to summary judgment as to the Villoldos' liability for wrongful attachment.  In light of its conclusion that García-Guzmán's claim was barred by the statute of limitations, the district court did not address that argument.  We believe the merits of García-Guzmán's claim against the Villoldos should be considered in the first instance by the district court.