Manuel García GUZMÁN and María
Emilia García Urgüelles,
Plaintiffs,

v.

Elena Ramírez de Arellano
de VILLOLDO, et al.,
Defendants.

No. Civil 99–1665(CCC)(JA).

United States District Court,
D. Puerto Rico.

Feb. 12, 2003.

Anotnio J. Amadeo–Murga, San Juan, PR, for Plaintiff or Petitioner.

Enrique Peral–Soler, Muñoz Boneta González Arbona Benítez & Peral, San Juan, PR, for Defendant or Respondent.

## *OPINION AND ORDER*

JUSTO ARENAS, Magistrate Judge.

### INTRODUCTION

Plaintiffs Manuel García Guzmán and María Emilia García Urgüelles ("Garcías") brought the instant action against the defendants Elena Ramírez de Arrellano de Villoldo, et al., ("Villoldos") for malicious prosecution and for the illegal attachment of plaintiffs' real and personal property. Following several procedural events, and finding no factual dispute regarding defendant's illegal attachment of $6,862, I granted partial summary judgment in favor of the Garcías. Said decision limited the triable controversy between the parties to the issue of damages. Trial began on February 4, 2003.

Prior to the trial date, the parties submitted a Joint Proposed Pretrial Order (Docket No. 64.) delineating the contested issues to be presented to the jury. One of the issues proposed by the plaintiffs was as to defendants' liability for the threat of attachment of plaintiffs' house: an attachment order was issued but never executed. Defendants objected to the presentation of such evidence at the pretrial conference held on February 3, 2003. The Villoldos objected to the presentation of said evidence arguing that the trial was limited to the issue of the damages sustained by

plaintiffs in connection with the illegal attachment of plaintiffs' funds. I ruled that I would not allow the introduction of such evidence and that the trial would be limited to the issue of the damages sustained by plaintiffs in relation to the illegal attachment of the $6,862.

In addition, at trial the Garcías called Dr. Guillermo Hoyos Precssas ("Dr.Hoyos"), a psychiatrist that was to serve as plaintiffs' expert. The Villoldos' *voir dire* of Dr. Hoyos revealed that his testimony and conclusions were primarily based on the fear of attachment rather than the actual attachment of the $6,862. In fact, the attachment of the funds played an insignificant role in his assessment of the damages suffered by the Garcías. Considering the prior ruling of the court limiting the issues only to the damages resulting from the attachment of the funds, I ruled that Dr. Hoyos' testimony was irrelevant. Additionally, I found that his method was not reliable and would confuse the jury. Thus the court excluded the testimony of Dr. Hoyos. Both rulings are further explained herein.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 15, 1999, plaintiffs Manuel García Guzmán and his wife María Emilia García Urgüelles filed this civil action claiming jurisdiction pursuant to 28 U.S.C. § 1332, and seeking damages under article 1802 of the Civil Code of Puerto Rico, 31 P.R. Laws Ann. § 5141 for wrongful attachment of personal property and the threat of wrongful attachment of real property. In a previous action, on or about September 14, 1994, the Villoldos obtained an Ex-parte Order of Attachment against Mr. García Guzman's property but did not seek execution at that time. Later on, as part of the execution proceedings, the amount of $6,682 was attached from the bank account of plaintiff García Guzmán at the Banco Popular de Puerto Rico.

Plaintiffs' complaint originally presented two identifiable causes of action: illegal attachment and malicious prosecution. (Docket No. 1, ¶¶ 16–17.) Paragraph seven states in relevant part that "the defendants proceeded to attach funds and attached funds belonging to [plaintiffs] ... in the amount of Six Thousand Eight Hundred Sixty Two Dollars and Sixty Four Cents ($6,862.64)...." (*Id.* ¶ 7.) Paragraph eight, however, refers to plaintiffs' real property and states as follows: "[o]n July 10, 1995, [the defendants] ... obtained a writ of attachment against the real property of [plaintiff] ... located in Parque Señorial C 3, Río Piedras, Puerto Rico." (*Id.* at ¶ 8.) The complaint does not specify whether the writ of attachment obtained for plaintiffs' home was ever executed. It is now undisputed that it was not.

On September 25, 2000, the court issued an opinion and order granting defendants' motion for partial summary judgment. (Docket No. 36.) In said opinion, the court held that plaintiffs' illegal attachment claim was time-barred. Defendants' motion at the time also requested summary disposition of the wrongful attachment of real property because the writ of attachment was never executed. (*Id.* at 2.) Plaintiffs' claim for malicious prosecution was voluntarily dismissed in order to seek review from the court of appeals. (Docket Nos. 39 & 40.) On December 3, 2001, the court of appeals issued its mandate reversing this court's grant of summary judgment on statute of limitations grounds. *García–Guzmán v. Villoldo*, 273 F.3d 1 (1st Cir.2001). The court of appeals held that the claim for wrongful attachment was not time-barred and remanded the case to this court for further proceedings. *Id.* at 9. Immediately thereafter, the Garcí-

as moved the court to rule on their pending motion for partial summary judgment.

■ On May 14, 2002, I ruled on plaintiffs' motion for partial summary judgment, (Docket No. 48), finding that there was "no genuine issue of material fact[s] as to whether plaintiffs suffered [a] wrongful attachment of their personal property."[1] (*Id.* at 4.) The opinion and order specifically stated that a pretrial conference would be set on the issue of damages. (*Id.* at 5.) Similarly, a report was issued on September 4, 2002, where I set *a jury trial on the issue of damages* for February 4, 2003. (Docket No. 56.) (Emphasis added.) The Garcías raised the issue of the fear-of-attachment claim again in the legal theory section of the Proposed Pretrial Order. At the pretrial conference held on February 3, 2003, the issue was again raised by the plaintiffs, and in the morning of February 4, 2003—minutes before the trial was supposed to start—the court listened to further argument regarding the fear-of-attachment issue. The court ruled that

trial would be limited to the damages suffered only for the wrongful attachment of plaintiffs' funds.

Furthermore, plaintiffs announced Dr. Guillermo Hoyos Precssas, M.D., ABFE, F.A.C.F.E., a well-respected psychiatrist in the medical community, as their expert witness. According to the pretrial order, he would testify that the attachment and lawsuit suffered by plaintiffs caused them an emotional trauma and contributed to or caused their subsequent divorce. The pretrial report also mentions that this conclusion is described in the doctor's report and deposition.

When Dr. Hoyos was called at trial, the defense moved to *voir dire* the expert outside of the presence of the jury, pursuant to Rule 104[2] of the Federal Rules of Evidence. The defense argued that Dr. Hoyos' testimony was not relevant under Federal Rule of Evidence 401[3] and even assuming that it was, the testimony should be excluded pursuant to Federal Rule of Evidence 702[4] as it could confuse the is-

1. In order to prevail on a or wrongful attachment claim three elements need to be present: (1) that the plaintiff's property was attached; (2) that the action brought against him or her, and in which the attachment was decreed, ended with a final judgment in his or her favor; and (3) that plaintiff suffered damages. *Rodón v. Fernández Franco*, 105 D.P.R. 368, 370 (1976) (citing *Frigorífico Miguel H. Ortiz v. Quiles*, 101 D.P.R. 676, 688 (1973)); *see also de la Matta v. Carreras*, 92 D.P.R. 85, 90 (1965) (citing *Martí v. Hernández*, 57 D.P.R. 819, 823 (1940)).

Plaintiffs' claim of wrongful attachment complies with the three elements required for such claims. The sum of $6,862 in plaintiffs' bank account at Banco Popular was attached on June 21, 1995. The action brought against plaintiffs ended with a final judgment in their favor; and plaintiffs suffered damages as a result of the wrongful attachment by defendants.

2. Federal Rule of Evidence 104 states in pertinent part:

**(a) Questions of admissibility generally.** Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

3. Federal Rule of Evidence 401 provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence

4. Federal Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or edu-

sues for the jury. Plaintiffs disagreed, noting that the psychiatrist had sufficient information, including an oral summary of plaintiffs' testimonies at trial, to reach a conclusion that the attachment of the $6,862 was a leading cause of plaintiffs' emotional damages, depression and divorce. The testimony of Dr. Hoyos was excluded at trial.

## DISCUSSION

### A. *The Law of the Case Doctrine*

 It is well-established that " 'the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.' " *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) (dictum)). The rule prevents the agitation of issues and promotes the finality and efficiency of the judicial process. *Id.* at 816, 108 S.Ct. 2166. Under the doctrine, federal courts generally refuse to reopen what has already been decided. *In re Cabletron Sys., Inc.*, 311 F.3d 11, 22 (1st Cir.2002). The doctrine is a prudential rule of policy and practice, *Cohen v. Brown Univ.*, 101 F.3d 155, 168 (1st Cir.1996), because it serves important goals. It should be treated respectfully and applied

according to its tenor in the absence of exceptional circumstances. *United States v. Rivera–Martínez*, 931 F.2d 148, 151 (1st Cir.1991). It has also been observed that although the law of the case doctrine "does not apply to every possible issue that a party may raise and is limited to those issues previously decided," it "encompasses all things 'decided by necessary implication as well as those decided explicitly.' " *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 169 (11th Cir.1994) (quoting *Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 (11th Cir.1984) (per curiam)).

 In *Alberty–Vélez v. Corporación de P.R. Para la Difusión Pública*, 242 F.3d 418, 422 (1st Cir.2001), the First Circuit stated that a partial summary judgment adjudication has been compared to a pretrial order under Federal Rules of Civil Procedure 16,[5] inasmuch as it narrows the scope of trial. Similarly, "[o]rders entered following Rule 16 conferences are not lightly disturbed. Once entered, a Rule 16 order 'controls the subsequent course of action.' " *Id.* at 423 (quoting *Brook Village North Assoc. v. Gen. Elec. Co.*, 686 F.2d 66, 71 (1982)). The adjudication serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact. *Alberty–Vélez v. Corporación de P.R. Para la Difusión Pública*, 242 F.3d at 422.[6]

cation, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

**5.** Rule 16 provides in relevant part:

(e) **Pretrial Orders.** After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order.

The order following a final pretrial conference shall be modified only to prevent manifest injustice.

Fed.R.Civ.P. 16(e).

**6.** Federal Rule of Civil Procedure 16 has as one of its objectives formulating the issues and eliminating frivolous claims and defenses, thus the court is directed to define the issues, facts and theories actually in contention which means that extraneous issues should be weeded out. 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1525, at 242–43 (1990).

With these principles in mind, the court disallowed the presentation of evidence with respect to anything other than the issue of damages. The opinion and order issued by the court on May 14, 2002, limited the issues in dispute to the damages suffered by the Garcías as a result of the wrongful attachment of funds. It did so both explicitly and by implication, and it was understood ever since that the trial was so limited. Said opinion and order granting partial summary judgment constitutes the law of the case and as precedent makes clear it governs the subsequent course of the litigation. Consequently, the presentation of evidence with respect to liability on the fear-of-attachment claim is precluded, and thus becomes irrelevant at trial.

The Garcías argue that cases from the Puerto Rico Supreme Court, this court, and the Court of Appeals of Louisiana allow the introduction of evidence on the fear-of-attachment issue. They cite to *Berríos v. Int'l Gen. Elec.*, 88 D.P.R. 109 (1963), in which the court stated that irrespective of whether or not the attachment was completed, the facts of that particular case gave rise to the imposition of liability under article 1802 of the Puerto Rico Civil Code. *See W. Clay Jackson Enter., Inc. v. Greyhound Leasing & Fin. Corp.*, 463 F.Supp. 666, 673 (D.P.R.1979). Plaintiffs also cites *Escat v. Nat'l Bank of Commerce*, 256 So.2d 786, 787–88 (La.App. 1972), where the court allowed an action for wrongful attachment even when the plaintiff was never deprived of her property. This case was overruled albeit on other grounds. *See Escat v. Nat'l Bank of Commerce in New Orleans*, 284 So.2d 832 (La.App.1973); *Gen. Motors Acceptance Corp. v. Meyers*, 385 So.2d 245 (La.1980).

In any event, I do not contest that there may be a situation where the threat of a non-executed writ of attachment is actionable under the broad language of article 1802. The viability of such a claim is not disputed. I question, however, whether such a claim would be maintainable in the instant case as the facts of *Berríos* are distinguishable. The actions of the defendant in that case were far more egregious and the threat more imminent. But the court's ruling is not on the merits of such a claim; it is based on the procedural developments of the case. Therefore, the trial is limited to the issue of the damages sustained by the plaintiffs as a result of the already adjudicated wrongful attachment of $6,862. Any evidence as to the fear-of-attachment claim is irrelevant and hereby excluded.

### B. *The Expert Testimony of Dr. Hoyos Precssas*

The examination of Dr. Hoyos revealed that the attachment of the $6,862 played an insignificant role, if any, in relation to plaintiffs' damages. While the incident is mentioned in the expert's report, it plays no role as part of the relevant data considered as basis to form his opinion. The expert made clinical findings and reached a diagnosis, relying on the latest DSM, that is, DSM IV. He found that both plaintiffs suffered from "Major Depression with post traumatic stress disorder features." At the deposition of the expert taken on December 11, 2002, two months before trial, Dr. Hoyos testified that what triggered plaintiffs' depression was a court order attaching plaintiffs' real property on July 10, 1995. He later clarified that what triggered the "problem" was the threatened embargo (attachment) of plaintiffs' home.

The well-accepted rule is that pursuant to Federal Rule of Evidence 702, judges have been imposed an important gatekeeping function that requires them to consider three factors before allowing the testimony of a proposed expert witness.

See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (defining the role of the trial judge in screening the admissibility of scientific expert evidence); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (extending the gatekeeper function to technical, specialized knowledge and other nonscientific expert evidence). A trial judge must determine: (1) the qualifications of the expert by knowledge, skill, experience, training or education; (2) whether the testimony concerns scientific, technical, or other specialized knowledge; and (3) whether the testimony is such that would assist the trier of fact in understanding or determining a fact in issue. *Correa v. Cruisers, A Div. of KCS Int'l, Inc.,* 298 F.3d 13, 24 (1st Cir.2002) (citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. at 589, 113 S.Ct. 2786). "The judge, ..., is expected to screen the opinion testimony and the scientific foundations of the opinion as part of the determination of whether the testimony is admissible into evidence." Justo Arenas & Carol M. Romey, *Professional Judgment Standards and Losing Games for Psychology, Experts and the Courts,* 68 Rev. Jur. U.P.R. 159, 169 (1999). Indeed, in performing such gatekeeper function, the court must " 'decide whether the proposed testimony, including the *methodology* employed by the witness ... rests on a *reliable foundation* and is *relevant* to the facts of the case.' " *Cummings v. Standard Register Co.,* 265 F.3d 56, 64 (1st Cir.2001) (quoting *Ed Peters Jewelry Co. v. C & J Jewelry Co.,* 124 F.3d 252, 259 (1st Cir.1997)) (emphasis added). Moreover, a proposed expert that does not apply reliable principles and methods to the facts or data he or she is presented with, cannot reasonably assist the trier of fact. *See Torres v. KMart Corp.,* 233 F.Supp.2d 273, 285 (D.P.R. 2002). In sum, the trial judge is vested with broad discretion, pursuant to the gatekeeper function established by *Daubert, Kumho* and its progeny, in determining the admissibility of expert testimony. *See Baker v. Dalkon Shield Claimants Trust,* 156 F.3d 248, 251 (1st Cir.1998).

 I had previously made a determination limiting this trial to the issue of damages stemming from the attachment of funds, precluding plaintiffs from presenting evidence of the writ of attachment which authorized the attachment of their real property, or evidence of damages stemming from the anxiety or apprehension possibly caused by the issuance of such writ, as irrelevant. Additionally, his testimony would clearly be based upon insufficient data. While the expert made clinical findings and made use of reliable principles and methods, the DSM–IV was not reliably applied to reach the diagnosis since a reading of the DSM–IV reflects that there is no such diagnosis as Major Depression with post traumatic stress disorder features.

It is clear that the rejection of expert testimony is the exception rather than the rule, and it is also true that, as plaintiffs have noted, and as stated at *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. at 596, 113 S.Ct. 2786, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See* Fed.R.Evid. 702 advisory committee's note. Nevertheless, it is also true that the court now plays a role as gatekeeper to exclude unreliable testimony and since *Kumho,* it is clear that such a function also applies to all expert testimony, not just testimony based in science. *Id.*

Having considered the *voir dire* of plaintiffs' expert under the rubric of Rules 104, 401, 402, and 702 of the Federal Rules of

Evidence, I find that the testimony is irrelevant to the damages suffered by plaintiffs as a result of the June 21, 1995 attachment of $6,862. I also find that Dr. Hoyos' testimony was not based on any reliable application of accepted methods. Allowing such testimony would confuse the jury, just as allowing testimony in the form of opinion based on an issue I have determined not relevant, as well as other irrelevant factors mentioned in the expert report, would also tend to confuse the trier of fact. In view of the above, plaintiffs' expert witness is excluded as a trial witness.

## CONCLUSION

Having determined that the trial is limited to the issue of damages sustained only from the attachment of plaintiffs' funds, the Garcías were precluded from presenting any evidence on the fear-of-attachment claim. Said evidence is irrelevant to the triable issues and accordingly excluded. In addition, the expert witness proposed by plaintiffs based his opinions on irrelevant data as well as an unreliable method. Consequently, his testimony would not have assisted the trier of fact and is also excluded.

SO ORDERED.

Preliminary Questions

Definition of "Relevant Evidence"