Paul A. HAMILTON, Debtor.

Paul A. Hamilton, Appellant,

v.

Wells Fargo Bank, N.A., Appellee.

BAP No. 08–046.

Bankruptcy No. 07–15290–FJB.

United States Bankruptcy Appellate Panel of the First Circuit.

March 6, 2009.

540

David G. Baker, Boston, MA, on brief for Appellant.

John S. McNicholas, on brief for Appellee.

Before CARLO, DEASY, and KORNREICH, United States Bankruptcy Appellate Panel Judges.

DEASY, Bankruptcy Judge.

Paul A. Hamilton (the "Debtor") appeals from the bankruptcy court order sustaining the objection of Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust ("Wells Fargo"), to his third amended chapter 13 plan (the "Order Sustaining Objection"). Because we conclude that the Debtor's plan provided for "periodic payments" and that 11 U.S.C. § 1325(a)(5)(B)(iii)(I) prohibits balloon payments on secured claims where the creditor has not accepted the plan and the debtor has not surrendered the property, we **AFFIRM** the Order Sustaining Objection.

## BACKGROUND

The Debtor filed a chapter 13 petition in 2007. Thereafter, he filed a third amended plan that proposed, among other things, to bifurcate the mortgage on a multi-family dwelling and pay the entire claim through the plan. The plan proposed to bifurcate the Wells Fargo secured claim on a multi-family dwelling into a secured claim equal to $375,000.00, the value of the property, and an unsecured claim for $149,542.67, the balance of the Wells Fargo claim. The plan also provided that the interest rate on the secured claim would be fixed at 10% and that the Wells Fargo secured claim would be paid in full over the 60–month term of the plan. The plan provided:

**I. SECURED CLAIMS**

C. Modified claims being paid through the trustee:

**OPTION ONE MORTGAGE** 1     $297,339.60

4. [ . . . ] The monthly payment would be $4,029.77, however this plan does not call for any "periodic payments." Distributions shall be in such amounts and at such times as the chapter 13 trustee deems administratively convenient.

5. In or before the 60th month, the debtor shall refinance the mortgage as modified to pay the balance then due as a balloon payment.

The plan expressly acknowledges that plan payments to the chapter 13 trustee would only support a payment of $4,029.77 per month on the secured claim, which is the payment based upon a fifteen-year term, not a five-year term, for the modified secured claim. In order to complete payment of the modified secured claim within the term of the plan, the plan provided in section I.C.5 for a balloon payment on or before the 60th month of the plan. Wells Fargo objected to the plan, focusing its argument almost exclusively on the assertion that the provision contained in section I.C.5 represented a balloon payment, which violated § 1325(a)(5)(B)(iii)(I).[2] The Debtor filed a response accompanied by a memorandum of law in which he argued that § 1325(a)(5)(B)(iii)(I) does not prohibit balloon payments. The bankruptcy court held a hearing on the matter, at the conclusion of which it issued the Order Sustaining Objection.[3] The Debtor timely appealed.

---

1. Wells Fargo appeared in this proceeding as trustee for Option One Mortgage Loan Trust.

2. Unless otherwise indicated, all references to the "Bankruptcy Code" or to specific sections are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8

("BAPCPA"), and all references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

3. The Order Sustaining Objection is a proceeding memorandum the court issued in conjunction with the hearing; the bankruptcy court provided no discussion therein as to its reasons for sustaining Wells Fargo's objec-

## JURISDICTION

A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An order denying confirmation of a chapter 13 plan is interlocutory where the debtor may propose another plan. *Watson v. Boyajian (In re Watson)*, 309 B.R. 652, 659 (1st Cir. BAP 2004), *aff'd*, 403 F.3d 1 (1st Cir.2005). Here, the Order Sustaining Objection is interlocutory as the Debtor was free to propose another plan. However, we previously granted leave to appeal.

## STANDARD OF REVIEW

There are no disputed facts in this appeal. We review the question of whether a balloon payment provision violates § 1325(a)(5)(B)(iii)(I) *de novo*, as it is a question of statutory construction. *See Stornawaye Fin. Corp. v. Hill (In re Hill)*, 387 B.R. 339, 345 (1st Cir. BAP 2008).

## DISCUSSION

A bankruptcy court must confirm a chapter 13 plan that meets the criteria set forth in § 1325(a). *See* 11 U.S.C. § 1325(a). With respect to allowed secured claims, § 1325(a)(5) requires either that: (1) the claim holder has accepted the plan; (2) the plan comply with the provisions of § 1325(a)(5)(B); or (3) the debtor surrender the property securing the claim to the claim holder. *See* 11 U.S.C. § 1325(a)(5).[4] Here, the Debtor did not propose to surrender the property in question, and the secured creditor did not accept the plan.[5] Thus, the sole question

---

tion. Instead, the bankruptcy court simply noted "Hearing held." Although the Debtor failed to provide a transcript of the hearing, we find that the appellate record provides a sufficient basis for us to review the Order Sustaining Objection, as Wells Fargo's objection focused almost exclusively on the balloon payment. *See Gagne v. Fessenden (In re Gagne)*, 394 B.R. 219, 225 (1st Cir. BAP 2008) (holding that failure to provide hearing transcript is not fatal to appeal where facts are not in dispute and record makes clear that issue on appeal is one of statutory construction).

4. Section 1325(a)(5) provides:

[W]ith respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that—
(I) the holder of such claim retain the lien securing such claim until the earlier of—
(aa) the payment of the underlying debt determined under nonbankruptcy law; or
(bb) discharge under section 1328; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
(iii) if—
(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
(C) the debtor surrenders the property securing such claim to such holder.
11 U.S.C. § 1325(a)(5).

5. There is no issue in this case as to whether the holder of the secured claim has impliedly

before us is whether the plan provisions for the Wells Fargo secured claim comply with the equal payment provisions of § 1325(a)(5)(B)(iii)(I) of the Bankruptcy Code.

## 1. Section 1325(a)(5)(B)

■ BAPCPA amended § 1325(a)(5)(B) by requiring that, with respect to every allowed secured claim provided for by the plan, periodic payments be made in equal monthly amounts. *See* § 1325(a)(5)(B)(iii)(I); 5 Keith M. Lundin, *Chapter 13 Bankruptcy* § 448.1 (3d ed.2000). Congress enacted the equal payment provision and a companion provision extending the concept of adequate protection (formerly a pre-confirmation requirement) to post-confirmation plan payments in response to creditors' concerns about balloon and quarterly payments. *In re Luckett*, 2007 WL 3125278, at *1 (Bankr. E.D.Wis. Oct. 24, 2007). The equal payment provision prevents debtors from back loading payments to secured creditors or paying them other than on a monthly basis. *Id.*

Overwhelmingly, courts have held that by its very terms, a balloon payment is not equal to the payment that preceded it, and thus violates § 1325(a)(5)(B)(iii)(I) with respect to periodic payments on a secured claim under a chapter 13 plan. *See In re Carman*, 2008 WL 2909863, at *1 (Bankr. D.Mass. July 25, 2008); *In re Wallace*, 2007 WL 3531551 (Bankr.M.D.N.C. Nov. 12, 2007); *In re Luckett*, 2007 WL 3125278, at *2; *In re Newberry*, 2007 WL 2029312, at *3–4 (Bankr.D.Vt. July 10, 2007); *In re Lemieux*, 347 B.R. 460, 463 (Bankr.D.Mass.2006); *In re Wagner*, 342 B.R. 766, 772 (Bankr.E.D.Tenn.2006); *In re DeSardi*, 340 B.R. 790, 805 (Bankr. S.D.Tex.2006); *see also* William J. McLeod, *Trick or Treat: A (Not–So)–Scary Look at Equal Monthly Payments Under § 1325(a)(5)*, 24–Oct. Am. Bankr. Inst. J. 14 (2008); *but see In re Davis*, 343 B.R. 326, 328 (Bankr.M.D.Fla.2006). Here, the Debtor's plan provides for a balloon payment at or near completion of the plan. By its very terms, the balloon payment is not equal to the preceding payments and therefore it is prohibited by § 1325(a)(5)(B)(iii)(I). *See id.*

## 2. "Periodic Payments"

■ The Debtor argues that § 1325(a)(5)(B) does not apply because his plan did not provide for "periodic payments."[6] The Debtor's argument is an invitation for the Panel to elevate form over substance by allowing the Debtor to sidestep statutory requirements by attaching a label to his plan payments other than the one that actually applies. We must decline the invitation. *See Whitman v. Miles*, 387 F.3d 68, 75 (1st Cir.2004); *Garcia–Guzman v. Villoldo*, 273 F.3d 1, 8 (1st Cir.2001).

Section 1325(a)(5)(B)(iii)(I) provides that:

(iii) if—

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts.

11 U.S.C. § 1325(a)(5)(B)(iii)(I). The Bankruptcy Code does not define "period-

accepted the plan, as it filed an objection to confirmation.

6. The Debtor further argues that most plan provisions are discretionary with the Debtor, and therefore the bankruptcy court cannot require debtors to provide for periodic payments. While this may be correct, the issue is not whether a debtor has to provide for periodic payments, but rather when a plan has such a provision do the payments comport with the statutory requirements.

ic" and there are no cases directly addressing this question. *See* 5 Lundin § 448.1 (posing series of unanswered questions regarding meaning of "periodic"). Authoritative dictionaries, however, universally agree that the word "periodic" simply refers to an event that occurs repeatedly or regularly. *See Webster's Third New International Dictionary* 1680 (1981) ("occurring at regular intervals"); *Merriam–Webster Online Dictionary* ("occurring or recurring at regular intervals; occurring repeatedly from time to time"); *Black's Law Dictionary* 1165 (8th ed.2004) (defining "periodic payment" as "[o]ne of a series of payments made over time instead of a one-time payment for the full amount"); *see also* 5 Lundin § 448.1 (noting that most chapter 13 plans provide for monthly payments).

Here, the plan provided that the Debtor would pay the chapter 13 trustee $5,397.00 per month for 60 months. These payments satisfy any definition of the word "periodic." The Debtor then tries to distinguish between payments he makes to the trustee versus payments the trustee makes to creditors. Essentially, he argues that nothing in his plan directs the trustee to render payments in the same manner they are received by the Debtor. As an initial matter, section I.C.4 of the Debtor's plan directs the trustee to make distribution on the Wells Fargo modified secured claim "in such amounts and at such times as the chapter 13 trustee deems administratively convenient." However, the Debtor's plan need not provide such direction to trigger § 1325(a)(5)(B)(iii)(I) because the confirmed plan may not excuse the chapter 13 trustee from compliance with the payment provisions of § 1326(a)(2) of the Bankruptcy Code.

After a bankruptcy court confirms a chapter 13 plan, § 1326(a)(2) requires the trustee to distribute the debtor's payments "in accordance with the plan as soon as practicable." 11 U.S.C. § 1326(a)(2). The phrase "in accordance with the plan" rather plainly refers to the terms set forth in the plan, i.e., the amount the debtor pays in and the break down of the amounts to be paid to each creditor. The trustee is, therefore, constrained by the terms of the plan and must make payments accordingly. *See id.* In this case, the plan requires the Debtor to make substantial monthly payments to the chapter 13 trustee. Section 1326(a)(2) will then impose an obligation on the chapter 13 trustee to make payments on the Wells Fargo modified secured claim on a monthly basis.

The provisions of the plan and the requirements of § 1326(a)(2) will compel "periodic" payments on account of the Wells Fargo modified secured claim. Since the Debtor is making monthly payments under the plan, the trustee would be required to make monthly payments to the holder of the Wells Fargo modified secured claim under provisions of § 1326(a)(2). The chapter 13 plan may not alter the trustee's obligations under the Bankruptcy Code or it would not satisfy the confirmation requirement in § 1325(a)(1) of the Bankruptcy Code. Therefore, the payments must comply with the requirements of § 1325(a)(5)(B)(iii)(I) regardless of whether the plan explicitly directs timing of payments by the trustee. Again, to suggest otherwise is to elevate form over substance. *See Whitman,* 387 F.3d at 75; *Garcia–Guzman,* 273 F.3d at 8.

### 3.  *Effect of § 1322(b)(2)*

The Debtor further argues that a prohibition on balloon payments effectively nullifies § 1322(b)(2) because "many" debtors cannot afford to pay the entirety of their mortgage in equal monthly amounts within five years. He also asserts that there is no reason to believe that Congress intend-

ed to put an end to the well established practice of balloon payments. Section 1322(b)(2) allows chapter 13 debtors, through their plan, to modify the terms of debt secured by real property that is not their primary residence. *See* 11 U.S.C. § 1322(b)(2).[7]

One court has held that § 1322(e)[8] over-rides § 1325(a)(5)(B)(iii)(I) and permits un-equal payments where a plan proposed to cure arrears on a mortgage in which the final payment on the secured claim is due after the chapter 13 plan ends. *See In re Davis*, 343 B.R. at 328 (analyzing interplay of §§ 1325(a)(5) and 1322(b)(5)).[9] In *Davis*, the bankruptcy court analyzed the requirements of §§ 1325(a)(5) and 1322(b)(5) from a historical perspective. The court recounted that Congress had enacted § 1322(e) in response to the Supreme Court's decision in *Rake*, which held that arrearages on a mortgage claim were "provided for" by the plan, and that the creditor was therefore entitled to interest under § 1325(a)(5)(B)(ii). *Id.* at 328 (citing *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993)). The *Davis* court reasoned that § 1322(e) overruled *Rake* in that it had the effect of overriding § 1325(a)(5) when arrears on a long term debt are cured. *Id.*

We disagree with the *Davis* decision. *See In re McDonald*, 397 B.R. 175, 177–78

(Bankr.D.Me.2007); *In re Schultz*, 363 B.R. 902, 906 (Bankr.E.D.Wis.2007). More specifically, we reject the idea that § 1322(e) entirely removed cure payments from coverage under § 1325(a)(5). *See In re McDonald*, 397 B.R. at 177. In *McDonald*, the court concluded that while *Rake* had been "checked" with respect to interest on cure payments, "§ 1322(e) did nothing to upset *Rake's* determination that a cure proposal under § 1322(b)(5), with or without interest, is a proposal to modify a secured claim under a plan. As such, it must meet the requirements of § 1325(a)(5)." *Id.* at 178.

Indeed, the idea that § 1322(b)(2) or (b)(5) is at odds with § 1325(a)(5)(B)(iii)(I) is simply wrong. *See In re Schultz*, 363 B.R. at 906. Sections 1322(b)(2) and (b)(5) address a debtor's right to cure arrears on a long term secured debt. They do not address the manner in which debtors are permitted, or required, to render payment on such debt. *See id.* (reasoning that "[§] 1322(b)(5) just means that the entire se-cured claim need not be paid in full under certain circumstances allowing cure of the default, but the claim is still an allowed secured claim"). Section 1325(a)(5) gov-erns the manner in which debtors must provide for payments on secured claims, absent the consent of the holder of such claim. *See In re McDonald*, 397 B.R. at 176; 11 U.S.C. § 1325(a)(5).

---

7. Section 1322(b)(2) provides:

   (b) Subject to subsections (a) and (c) of this section, the plan may—
   (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of hold-ers of unsecured claims, or leave unaffected the rights of holders of any class of claims.

8. Section 1322(e) provides:

   Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to

   cure a default, the amount necessary to cure the default shall be determined in ac-cordance with the underlying agreement and applicable nonbankruptcy law.

9. Although § 1322(b)(5) rather than (b)(2) was at issue in *Davis* and the cases that disa-greed with *Davis*, the reasoning applies here. The distinction between subsections (b)(5) and (b)(2) do not change the analysis with respect to § 1325(a)(5); it only changes the practical implications for debtors attempting to pay an entire secured claim through the plan under subsection (b)(2), rather than sim-ply the arrears under subsection (b)(5).

Thus, § 1325(a)(5) serves to restrict, to a certain degree, a debtor's ability to cure arrears on a long term debt. However, such restriction is in no way inconsistent with the provisions of §§ 1322(b)(2) or (b)(5). Nothing in §§ 1322(b)(2) or (b)(5) suggests that a debtor's right to cure arrears on long term secured debt through their plan is unfettered by other obligations and requirements under the Bankruptcy Code. *See* 11 U.S.C. § 1322(b)(2); § 1322(b)(5). Section 1322(e) does not alter that analysis. Indeed, the fact that Congress amended § 1325(a)(5)(B) specifically to address secured creditors' concerns regarding back loaded payments, *see In re Luckett*, 2007 WL 3125278, at *1, confirms this interpretation. That this constraint may put chapter 13 reorganization beyond the reach of some debtors is unfortunate, but does not change the outcome. As such, the bankruptcy court did not err in concluding that § 1325(a)(5)(B)(iii)(I) prohibits balloon payments where the holder of the secured claim has not accepted the plan.

## CONCLUSION

Because we conclude that the Debtor's plan provided for "periodic payments" and that § 1325(a)(5)(B)(iii)(I) prohibits unequal payments on secured claims where the debtor has not surrendered the property and the creditor has not accepted the plan, we **AFFIRM** the Order Sustaining Objection.